In re Joseph B. SHUMATE, Jr., Debtor.

### NCNB FINANCIAL SERVICES, INC., Plaintiff,

v.

### Joseph B. SHUMATE, Jr., Defendant.

**Bankruptcy No. 7–84–00549.**
**Adv. No. 7–84–0183.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Nov. 12, 1985.

Michael A. Cleary and James F. Douthat, Roanoke, Va., for plaintiff.

Jonathan M. Apgar, Roanoke, Va., for debtor/defendant.

John R. Patterson, Roanoke, Va., trustee.

## MEMORANDUM OPINION

WILLIAM E. ANDERSON, Bankruptcy Judge.

This matter is before the court on the objection of NCNB Financial Services ("NCNB") to the discharge of the debtor, Joseph B. Shumate, Jr. ("debtor"), pursuant to 11 U.S.C. § 727(a).

The court finds this is a core proceeding. 28 U.S.C. § 157(b)(2)(J).

### FACTUAL BACKGROUND

The debtor, Joseph B. Shumate, Jr., is the former chief executive officer of Coleman Furniture, Inc., a corporation currently being liquidated under Chapter 7 of the Bankruptcy Code. While chief executive of Coleman Furniture, debtor personally guaranteed certain loans made by NCNB to Coleman Furniture. Because Coleman Furniture is currently being liquidated, the amount of NCNB's claim against debtor based on the guaranteed loans must await an accounting of Coleman Furniture's Chapter 7 bankruptcy estate.

On December 23, 1981 debtor borrowed $200,000.00 from NCNB and executed a promissory note payable upon demand to NCNB. This loan was secured by a deed of trust on debtor's residence. *See* Plaintiff's Exhibits 40 and 41.

On June 1, 1984 debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On May 7, 1984, approximately three weeks prior to the filing of his petition, the debtor borrowed $95,000.00 from a family trust and executed a deed of trust to secure the loan. *See* Plaintiff's Exhibits No. 1 and 2.

The debtor deposited the proceeds of this loan into two new interest-earning checking accounts opened on May 8, 1984 at a branch of Wachovia Bank and Trust Co. in Winston-Salem, North Carolina. *See* Plaintiff's Exhibit No. 4. Although bank account summaries of these two accounts

indicate that the two accounts had a total balance in excess of $45,000.00 as of the date of the filing of debtor's Chapter 11 petition, *see* Plaintiff's Exhibit No. 31, debtor did not list either of the accounts in his Statement of Financial Affairs filed with his bankruptcy petition on June 1, 1984. *See* Plaintiff's Exhibit No. 10.

The account summary of one of the two accounts containing the loan proceeds indicates that debtor wrote three checks in the amount of $25,000.00 each on May 22, 1984, May 29, 1984 and June 21, 1984. *See* Plaintiff's Exhibit No. 31. The account summary for the second account discloses that debtor wrote checks each made out to "cash" in the amount of $9,000.00 on May 22, 1984, May 29, 1984, May 31, 1984, June 5, 1984, June 12, 1984, June 19, 1984, and July 7, 1984. *See id;* Plaintiff's Exhibit 39 (Checking Account Summary of 6/15/84, p. 1). Nevertheless, at a hearing on June 4, 1984 held on debtor's motion for the use of cash collateral, debtor testified that he had only $5,000.00 to $6,000.00 in cash at the time he filed his petition. *See* Plaintiff's Exhibit No. 22, p. 6. At a hearing on August 21, 1984 debtor failed to reveal the existence of the two out-of-state accounts when questioned directly about the existence of such accounts. *See* Plaintiff's Exhibit No. 23, pp. 29–32, 38, 40.

By order of the court dated August 24, 1984, debtor's Chapter 11 case was converted to case under Chapter 7 of the Code. On December 3, 1984, after the chapter 7 trustee discovered the existence of the two out-of-state accounts into which debtor had deposited the $95,000.00 in loan proceeds, debtor filed an Amended Statement of Financial Affairs disclosing the existence of the two checking accounts.

At debtor's Rule 2004 hearing held January 22, 1985 debtor admitted that during the June 4, 1984 hearing he was in fact aware that the loan proceeds were located in the two Wachovia Bank accounts but that he nevertheless did not mention their existence then. *See* Plaintiff's Exhibit 31, p. 97.

The bank account summaries indicate that nearly all of the loan proceeds were expended by the time debtor filed his amended schedules disclosing the two Wachovia accounts. *See* Plaintiff's Exhibit No. 31. Debtor claims that a portion of the loan proceeds were used to pay off a $45,000.00 unsecured oral loan from a Mr. Ron Sofus, whom debtor claims is a "loan shark". Debtor states that repayment of this loan was contingent upon the outcome of certain lawsuits debtor was involved in. *See* Plaintiff's Exhibit No. 29 at 36–45. The debtor asserts that shortly before, and then after the filing of his petition, he repaid the loan. *Id.* However, the loan and the pre-petition payments were not listed on the debtor's Statement of Financial Affairs, Schedule of Liabilities, or List of Expenses incurred by debtor from the period of June 1 through August 21, 1984. *See* Plaintiff's Exhibits No. 10, 11, 14.

Debtor first revealed the alleged payments to Mr. Sofus on his amended schedules filed December 3, 1984, after debtor was forced to produce the cancelled checks from his two Wachovia accounts containing the loan proceeds. *See* Plaintiff's Exhibit No. 15. These cancelled checks reveal only the withdrawal of $9,000.00 in cash on five occasions. *See* Plaintiff's Exhibit No. 30, p. 8. Moreover, debtor states that he is unable to offer any information on how to contact or locate Mr. Sofus. *See* Plaintiff's Exhibit No. 21, pp. 38–41.

Debtor lists on his original Schedule of Property filed with his bankruptcy petition on June 1, 1984 twenty-three items of farming equipment valued at $62,000.00. *See* Plaintiff's Exhibit No. 12, (Item B. 2(i)). In his amended schedules filed on December 3, 1984, debtor deletes three items of previously listed farm equipment, indicating that these items could not be located. *See* Plaintiff's Exhibit No. 15. The Chapter 7 trustee reports, however, that he has only been able to locate three pieces of the twenty-three items of equipment originally listed by debtor. *See* Plaintiff's Exhibit No. 25, p. 43. When pressed for an explanation for the disappearance of the farm equipment, debtor states that he used an

outdated depreciation schedule in compiling the list of farm equipment for his original Schedule of Property.

Debtor also listed on his Schedule of Property only one insurance policy but later testified that he had at least two other policies with cash values and a term policy of life insurance with a pre-paid annual premium of $3,525.00. *See* Plaintiff's Exhibits No. 12 (Item B2(r)); No. 29, pp. 27–30; and No. 31, p. 52. Debtor also failed to list these additional policies on his amended schedules filed on December 3, 1984. *See* Plaintiff's Exhibit No. 15. Once the existence of the policies was established during the debtor's Rule 2004 hearing on January 22, 1985, the debtor refused to turn over the unearned portion of the pre-paid premium to the Chapter 7 trustee stating "by the time you could get the Court Order, the damned policy would be expired anyway, so it will not be cashed in, period." *See* Plaintiff's Exhibit No. 31, p. 52.

On June 27, 1985 NCNB filed an amended complaint against debtor setting forth two alternative counts. Count I requests that the court deny debtor a discharge under 11 U.S.C. § 727(a) on the statutory grounds set forth in §§ 727(a)(2), (a)(3), (a)(4)(A), (a)(4)(D), (a)(5), (a)(6)(A), and (a)(6)(C). Count II requests that the court determine in the alternative that should the debtor be granted a discharge, such discharge should be revoked pursuant to 11 U.S.C. §§ 727(d)(2) and (d)(3).

In response to NCNB's amended complaint, debtor argues alternative grounds to deny NCNB's request for denial of discharge. First, debtor asserts that NCNB lacks standing to object to the granting of debtor's discharge under 11 U.S.C. § 727(a). Second, debtor claims alternatively that even if NCNB has standing, the evidence adduced by NCNB is insufficient to support a denial of discharge under 11 U.S.C. § 727(a).

STANDING TO OBJECT TO DISCHARGE

Section 727(c)(1) of the Code enables the trustee or a creditor to object to the granting of a discharge of a debtor under § 727(a). The Code defines creditor as an "[e]ntity that has a claim against a debtor that arose at the time of or before the order for relief...." 11 U.S.C. § 101(9). The term "claim" is crucial to the understanding of the breadth of the definition of the term creditor. Section 101(4) of the Code defines claim in pertinent part as: "the right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(4). A review of the facts of this case discloses that NCNB satisfied the definition of creditor under 11 U.S.C. § 101(9).

■ Two separate financial transactions between debtor and NCNB establish that NCNB has a claim against debtor. The first of these involves the debtor's guarantee of loans made to Coleman Furniture, debtor's company, by NCNB. As noted, Coleman Furniture is presently being liquidated under a Chapter 7 bankruptcy. Consequently, NCNB's right to payment based upon debtor's guarantee of the Coleman Furniture loan must await an accounting of the Coleman Furniture bankruptcy estate. NCNB's right to payment, therefore, is unliquidated and thus, even if disputed, satisfies the definition of claim set forth in 11 U.S.C. § 101(4). Accordingly, because such right to payment arose prior to the filing of debtor's bankruptcy petition, NCNB meets the definition of creditor under 11 U.S.C. § 101(9).

■ A second financial transaction involving NCNB and debtor reinforces the conclusion that NCNB qualifies as a creditor under 11 U.S.C. § 101(9). As noted above, on December 23, 1981 NCNB gave debtor a $200,000.00 loan, secured by a deed of trust on debtor's residence, for which debtor executed a note payable to NCNB on demand. NCNB's right to payment based upon this loan to debtor is therefore liquidated and thus satisfies the definition of claim under 11 U.S.C. § 101(4). Accordingly, because NCNB's claim arose prior to the date of filing of debtor's chapter 11 petition, NCNB qualifies as a credi-

tor under 11 U.S.C. § 101(9). Consequently, NCNB is permitted under 11 U.S.C. § 727(c)(1) to object to the granting of debtor's discharge under § 727(a).

## DEBTOR'S CONCEALMENT OF LOAN PROCEEDS

█ Having determined that NCNB has standing to object to the debtor's discharge, the court must next ascertain whether any of the specific grounds for denial of discharge enumerated under § 727(a)(1)–(10) has been established. The record in this case is replete with evidence of debtor's misconduct which could support any of the various theories propounded by NCNB to bar debtor's discharge under § 727(a). Under one such theory, NCNB alleges that debtor's concealment of the out-of-state bank accounts containing the loan proceeds warrants denial of discharge under 11 U.S.C. § 727(a)(2). Section 727(a)(2)(A) states in pertinent part:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor . . ., has transferred, removed . . . or concealed—

(A) property of the debtor, within one year before filing of the petition; . . . .

Thus, to sustain an objection to discharge under § 727(a)(2)(A) the proof must establish: (1) that the debtor transferred or concealed property; (2) that such property belonged to the debtor; (3) that the transfer or concealment occurred within one year of the filing of the petition; and (4) that the debtor transferred or concealed the property with the intent to hinder, delay, or defraud a creditor. *In re Church*, 47 B.R. 186, 190 (Bankr.E.D.Tenn.1985); *In re Hargis*, 44 B.R. 225, 228 (Bankr.W.D.Ky. 1984); *In re Peery*, 40 B.R. 811, 813 (Bankr.M.D.Tenn.1984); *In re Gordley*, 38 B.R. 630, 631 (Bankr.S.D.Ohio 1984); *In re Reed*, 18 B.R. 462, 463 (Bankr.E.D.Tenn. 1982); 4 *Collier on Bankruptcy*, ¶ 727.-02[b] at 727–10 (15th ed. 1985).

Under Bankruptcy Rule 4005, the plaintiff has the burden of proof at trial of his objection to discharge. Fed.R.Bankr. 4005. After a review of the circumstances surrounding debtor's concealment of the loan proceeds, the court finds that NCNB has satisfied its burden.

A review of the record of this case discloses that each of the four elements required to deny discharge under 11 U.S.C. § 727(a)(2)(A) is present. As the facts set forth above indicate, debtor obtained the $95,000.00 loan on May 7, 1984 and executed a deed of trust on property he owned to secure it. Debtor then deposited the loan proceeds into the new checking accounts opened in his name on May 8, 1984 at the Wachovia Bank in Winston-Salem, North Carolina. These facts plainly establish the first two elements required to support a denial of discharge under § 727(a)(2)(A) are present. Furthermore, the facts reveal that the third element, requiring that the transfer or concealment occur within one year of the filing of the bankruptcy petition, is similarly present here. As noted previously, the debtor deposited the $95,000.00 in loan proceeds into the two out-of-state accounts May 8, 1984, approximately three weeks prior to the filing of debtor's bankruptcy petition on June 1, 1984. The court finds the concealment dates from the time debtor opened the accounts in May 1984 until he disclosed their existence in his amended statement of financial affairs filed on December 3, 1984. *See In re Kessler*, 51 B.R. 895, at 898 (Bankr.Kan.1985).

Satisfaction of the fourth element under 11 U.S.C. § 727(a)(2)(A) requires a showing that debtor acted with actual intent to hinder, delay, or defraud. *In re Devers*, 759 F.2d 751, 753 (9th Cir.1985); *In re Reed*, 18 B.R. at 464; *In re Waddle*, 29 B.R. 100, 103 (Bankr.W.D.Ky.1983). Actual fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct. *In re Devers*, 759 F.2d at 753–754; *Farmers Co-op Association v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982); *In re Kessler*, 51 B.R. 895, 898 (Bankr.D.Kan.1985); *In re Reed*, 18 B.R. at 464.

■ Because a debtor is unlikely to testify directly that his intent was fraudulent, the court may deduce fraudulent intent from all the facts and circumstances of a case. *In re Devers*, 759 F.2d at 754; *In re Nazarian*, 18 B.R. 143, 146 (Bankr.D.Md. 1982).

■ The circumstances surrounding debtor's concealment of the loan proceeds in the out-of-state accounts support the inference that debtor possessed the requisite fraudulent intent. As has been stated, debtor deposited the $95,000.00 in loan proceeds into the two out-of-state accounts on May 8, 1985. As the bank records indicate, the accounts had an approximate balance of $45,000.00 on the date of filing of debtor's chapter 11 petition. Nevertheless, debtor failed to list the accounts in his Statement of Financial Affairs filed with his petition only three weeks after he opened the accounts. When pressed for an explanation for not disclosing the accounts in his Statement of Financial Affairs, debtor testified that his hasty decision to file for bankruptcy precluded the preparation of an accurate Statement of Financial Affairs.

Debtor's conduct during the pendency of his case, however, not only raises serious questions as to the veracity of debtor's proferred explanation but also supports the inference that he acted with the requisite intent in concealing the loan proceeds. First, the bank statements of these accounts reveal that debtor cashed checks for large sums both immediately before and after he filed his bankruptcy petition. As noted previously, debtor wrote a check on one of these accounts for $25,000.00 on May 29, 1984, two days prior to the filing of his Chapter 11 petition. Similarly, as the bank statements for the second account containing the loan proceeds indicate, debtor cashed a check in the amount of $9,000.00 each on May 29, 1984 and May 31, 1984. The court finds it at best curious that debtor would neglect to disclose the existence of these accounts only days after he wrote checks on them for such large sums. Furthermore, the bank statements indicate that debtor also wrote several checks for large sums after filing his bankruptcy petition. It is evident, therefore, that debtor was aware of the existence of this account containing the loan proceeds around the time he filed his bankruptcy petition and statement of financial affairs on June 1, 1984.

Second, debtor's testimony at various bankruptcy hearings further reinforces the inference that debtor possessed the requisite fraudulent intent. As the facts above indicate, at the June 4, 1984 hearing on debtor's motion for the use of cash collateral, debtor testified that he had only $5,000.00 to $6,000.00 in cash at the time he filed his bankruptcy petition. However, as previously discussed, the account summaries of the two out-of-state accounts reveal that they contained a balance of over $45,-000.00 on the date of filing of debtor's petition. Moreover, as noted above, the debtor later testified at his Rule 2004 examination on January 22, 1985 that he was in fact aware of the money in these two accounts at the time he failed to disclose their existence when questioned about them at the June 4, 1984 hearing. Debtor's testimony thus indicates that he did not negligently fail to disclose the existence of the two accounts at the time he filed his bankruptcy petition.

Lastly, the fact that loan proceeds were virtually entirely disappated by the time debtor finally disclosed the existence of the two accounts likewise supports the inference that he acted with the requisite fraudulent intent. As the facts set forth above indicate, debtor continued to draft checks against the two accounts after the filing of his bankruptcy petition without disclosing the existence of the accounts. Only after they were discovered by the trustee did debtor amend his statement of financial affairs on December 3, 1984 to include the two checking accounts. However, as the bank statements disclose, nearly the entire $95,000.00 in loan proceeds contained in both accounts had already been paid out by that time. Such conduct precludes any possible finding of mere negligence that could

vitiate the inference that debtor possessed the requisite fraudulent intent.

Debtor nonetheless contends that he did not conceal the loan proceeds with the intent to defraud and alleges that a portion of such funds were used to pay a debt owed to Ron Sofus, an alleged "loan shark". The court finds debtor's contention insufficient to rebutt the inference that he acted with the requisite fraudulent intent. *In re Reed*, 18 B.R. at 464 (defendant's testimony that he did not transfer property with intent to defraud is insufficient to overcome inference of fraudulent intent); *In re Kessler*, 51 B.R. at 898 (debtor's explanation that portion of funds in concealed checking account were used to pay off creditors does not rebutt inference of fraud). Consequently, the court finds that the debtor's conduct surrounding his concealment of the Wachovia accounts containing the loan proceeds mandates a conclusion that debtor acted with the actual intent to hinder, delay and defraud creditors.

CONCLUSION

Based upon the foregoing, the court finds that the elements required to support a denial of discharge under 11 U.S.C. § 727(a)(2) are present. Consequently, the discharge of debtor must be denied. Accordingly, the court need not address the issues implicated by NCNB's remaining allegations under 11 U.S.C. §§ 727(a)(3), (a)(4)(A), (a)(4)(D), (a)(5), (a)(6)(A), (a)(6)(D), (d)(2) and (d)(3).

The appropriate order shall be entered.