In re Robert GOLDSTEIN, Debtor.

GORDON'S JEWELRY COMPANY OF
NEW JERSEY, INC., Plaintiff,

v.

Robert GOLDSTEIN, Defendant.

Bankruptcy No. 84–2411.
Adv. No. 85–137.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 30, 1986.

David B. Salzman, Campbell & Levine, Pittsburgh, Pa., for debtor/defendant.

Peter N. Pross, Alder Cohen & Grigsby, P.C., Pittsburgh, Pa., for plaintiff.

Robert W. Koehler, Pittsburgh, Pa., for trustee.

James Moody, CPA, Pittsburgh, Pa., trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court are:

1. Plaintiff's objection to Debtor's exemption of a Note and Mortgage, which documents are physically located in Pennsylvania, securing a debt negotiated in and encumbering realty located in New Jersey. In the event the law of Pennsylvania is

applicable, the exemption is proper; however, in the event the law of New Jersey is determinative, the exemption will be denied. For the reasons hereinafter set forth, Plaintiff's objection to the Debtor's exemption is sustained.

2. Debtor's objection to Plaintiff's claim against the estate, grounded upon equitable and statutory bases. Debtor argues that equity does not permit a creditor to collect a small part of a debt from the debtor's co-obligor, thereby leaving the bulk of the debt due and payable by the debtor. Debtor also argues that Plaintiff's non-compliance with relevant New Jersey statutes caused Plaintiff to suffer vicarious transferee liability. Plaintiff argues that the Debtor is barred from raising these defenses by the doctrine of res judicata, and that Debtor's equitable claims should be vitiated by Debtor's unclean hands. For the reasons hereinafter set forth, Debtor's objection is overruled and/or denied.

3. Plaintiff's objections to Debtor's discharge averring violations of §§ 727(a)(2)(A) and (a)(4)(A), in that Debtor transferred property individually owned to property owned as tenants by the entireties, with the intent to hinder, defraud, or delay. In addition, it is averred that Debtor knowingly and fraudulently made false oaths in connection with his bankruptcy petition. Debtor contends that there existed no intent to hinder, defraud or delay creditors, and that any omissions from his Schedules were made without the requisite intent. For the reasons hereinafter set forth, Plaintiff's objection is overruled and/or denied.

4. Plaintiff's objection to the dischargeability of its debt under §§ 523(a)(1)(A) and (a)(2)(A), averring that as assignee of a taxing authority's judgment against the Debtor, Plaintiff's claim is subrogated to the nondischargeable status given to the taxing body; and, that Debtor obtained funds from the Plaintiff through the use of false representations. The Debtor responds, averring that only a government entity is entitled to the statutory claim of nondischargeability; that Plaintiff, as as-

signee of the taxing body may not avail itself of this status. The Debtor also argues that it lacked the necessary scienter to make the type of false misrepresentations requiring a finding of nondischargeability. For the reasons hereinafter set forth, Plaintiff's objection is sustained.

### FACTS

This case was commenced on November 14, 1984, when Robert Goldstein ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Debtor elected to take his Pennsylvania state exemptions, which rendered this a "no-asset" case, as it pertains to the unsecured creditors.

On January 30, 1985, the First Meeting Of Creditors was held, wherein Gordon's Jewelry Company of New Jersey, Inc. ("Gordon's"), listed by the Debtor as an unsecured creditor, attended and questioned the Debtor as to his financial affairs.

Gordon's status as a creditor arises from the following factual situation:

On August 16, 1979, the Debtor, as president and fifty percent (50%) owner of Palley's Jewelers, Inc., Palley's Jewelers of Shore Mall, Inc. and Palley's Jewelers of Rio Mall, Inc., along with Norman and Julian Palley, owners of the remaining fifty percent (50%) interest, executed an Agreement of Sale, transferring the above-mentioned three (3) companies to Gordon's. In return for a tender of $535,000.00, Gordon's received all of the corporate assets, and an affidavit by the Debtor, as president of the corporations, certifying that:

1) all taxes and payments due had been completed;

2) all federal and state tax returns were filed, and no taxes were due;

3) all creditors were paid prior to closing; and,

4) no litigation existed against any of the corporations.

Gordon's representative avers, and this Court accepts as fact, that an important underlying basis of the Agreement was the affidavit of the Debtor.

In late 1981, the New Jersey Division of Taxation asserted a claim for unpaid taxes against the Palley's corporations. Additionally, New Jersey statutorily requires a purchaser in a bulk sales transaction to notify the state taxing authority of said sale, in order to avoid any transferee liability for delinquent taxes owed by the seller. Gordon's, based upon the Debtor's affidavit and at the specific request of the Debtor, did not give said notice, and was therefore assessed transferee liability in the amount of $45,898.23.

In due course, the New Jersey Division of Taxation obtained three (3) individual judgments against each of the three sellers, the Debtor, Norman Palley and Julian Palley, which were recorded in New Jersey. Thereafter, Gordon's paid the taxes due in return for the assignment of the judgments, which were also recorded in New Jersey.

Gordon's pursued Norman and Julian Palley, and the Debtor, in order to recover the funds it had paid. Based upon due process considerations, as will be more fully explained later, Gordon's satisfied the six (6) judgments against Norman and Julian Palley for $5,000.00; thereafter, Gordon's registered the three (3) New Jersey judgments, against the Debtor, in Pennsylvania. The total amount remaining due to Gordon's is $40,898.23.

On March 1, 1985, Gordon's filed an objection to one of the Debtor's claimed exemptions. Thereafter, on April 1, 1985, Gordon's filed an adversary proceeding, objecting to the Debtor's discharge and to the dischargeability of the certain debt. In return, the Debtor filed an objection to the allowance of Gordon's claim against the estate.

## I. OBJECTION TO EXEMPTION

Pursuant to Section 522(b)(2)(B) of the Bankruptcy Code, the Debtor elected to take his Pennsylvania state law exemptions. The pertinent language of this section states:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in ... paragraph (2) of this subsection ... Such property is—

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of this petition, ..., and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, or interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint interest is exempt from process under applicable nonbankruptcy law.

One of the assets owned by the Debtor and his wife by the entireties is a Mortgage and Note on a piece of real estate located in Margate, New Jersey. Gordon's has objected to the Debtor's claimed exemption in this property, asserting that, as New Jersey law permits a creditor of an individual spouse to attach entireties property, said property is not "exempt from process under applicable nonbankruptcy law". The Debtor argues that entireties property is exempt from process under Pennsylvania law, and that the Mortgage, which collateralizes a Note of Indebtedness, is therefore exempt under the Bankruptcy Code.

When faced with a true conflict of laws question, the first determination must be which state's choice of law rules are to be applied. Federal courts are bound by the choice of law rules of the forum state. *Klaxon v. Stentor Electric Manufacturing Company, Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Complaint of Bankers Trust Company,* 752 F.2d 874 (3rd Cir.1985); *Melville v. American Home Assurance Company,* 584 F.2d 1306 (3rd Cir.1978); *Rupinsky v. Miller Brewing Company,* 627 F.Supp. 1181 (W.D.Pa.1986).

Pennsylvania's conflict rules have changed dramatically in the last twenty

years. Where Pennsylvania at one time followed a strictly territorial approach, this State's courts have adopted a flexible combination of the Restatement Second of Conflicts "significant contacts" approach, and Professor Currie's "government interest analysis". *Myers v. Commercial Union Assurance Company,* 506 Pa. 492, 485 A.2d 1113 (1984); *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964); *In re Estate of Agostini,* 311 Pa.Super. 233, 457 A.2d 861 (1983); *Gillan v. Gillan,* 236 Pa.Super. 147, 345 A.2d 742 (1975).

Understanding that the significant contacts approach requires the Court to draw comparisons qualitatively as opposed to quantitatively, we begin by examining the various interests of the States of Pennsylvania and New Jersey.

New Jersey permits the creditors of an individual spouse to attach property held by the entireties. The creditor can obtain the debtor spouse's right of survivorship and the debtor spouse's interest in the life estate for the joint lives of the husband and wife. However, in deference to the family unit, New Jersey does not permit partition of the property, as would normally be the case between tenants in common.

Additionally, New Jersey does permit a creditor of an individual spouse to immediately reach the proceeds of the sale of a family residence, because New Jersey does not recognize the existence of tenancies by the entireties in personal property. In this way, New Jersey stresses the need to protect a creditor's rights to the fullest possible extent, without disrupting the family unit. *See Newman v. Chase,* 70 N.J. 254, 359 A.2d 474 (1976); *Fort Lee Savings & Loan Association v. Li Butti,* 55 N.J. 532, 264 A.2d 33 (1970); *King v. Greene,* 30 N.J. 395, 153 A.2d 49 (1959).

As the creditor in this case is a New Jersey corporation, New Jersey does have an interest in protecting a creditor/resident of its State.

In contradistinction, Pennsylvania law holds that all property, real or personal, can be held by the entireties. A tenancy by the entireties can also be created in a chose in action and a chose in possession. In Pennsylvania, while action can be taken on entireties property by a joint creditor, no action of any sort may be taken by an individual spouse's creditor against said property. Only divorce, or agreement by the husband and wife, can change the tenancy stature of the parties, and only then can such a creditor begin process. Pennsylvania, therefore, holds the interest of the marital unit above that of the individual spouse's creditor. *See Community Federal Savings and Loan Association v. Luckenbach,* 436 Pa. 472, 261 A.2d 327 (1970); *Shapiro v. Shapiro,* 424 Pa. 120, 224 A.2d 164 (1966); *Heatter v. Lucas,* 367 Pa. 296, 80 A.2d 749 (1951); *Blumner v. Metropolitan Life Insurance Company,* 362 Pa. 7, 66 A.2d 245 (1949); *Clingerman v. Sadowski,* 335 Pa.Super. 514, 485 A.2d 11 (1984); *Patwardhan v. Brabant,* 294 Pa.Super. 129, 439 A.2d 784 (1982); *Sterling v. Smith,* 200 Pa.Super. 544, 189 A.2d 889 (1963); *Kauffman v. Stenger,* 151 Pa.Super. 313, 30 A.2d 239 (1943).

As the Debtor and his wife are now Pennsylvania domiciliaries, this state also holds a significant interest in having its law apply.

It appearing that the governmental interests weigh equally, we turn to the Restatement Second, and the various significant contacts in order to determine which state's law must be applied.

The following relationships are pertinent:

(1) The real estate, in consideration for which the initial indebtedness arose, is located in New Jersey.

(2) The Note identifying the indebtedness and the Mortgage which collateralizes the Note are presently located in Pennsylvania; said documents were negotiated and executed in New Jersey, and the Mortgage is recorded in New Jersey.

(3) The payments on the Mortgage are made from New Jersey; the payments have been received in Florida, California, and Pennsylvania, depend-

ing upon the Mortgagees' then recognized domicile.

(4) The creditor is a New Jersey corporation.

(5) The Debtor and his wife are presently domiciled in Pennsylvania.

It appears to the Court that both the qualitative and quantitative contacts in the case require us to apply New Jersey's law as to the exemption of the entireties property. It is merely fortuitous that the Debtor and his wife now reside in Pennsylvania. They have been recently domiciled in several other states as well, one of which was New Jersey.

At the time these various documents were negotiated and executed, it must be assumed that the parties intended and expected that New Jersey law would be determinative of any later disputes. At the very least, it must be concluded that at the time of execution, the parties had no present intent to apply the laws of Pennsylvania to these documents.

It appears therefore that as:

1) the Bankruptcy Code allows exemption of entireties property *only* if not susceptible to process under applicable nonbankruptcy law;

2) New Jersey law is the applicable nonbankruptcy law; and,

3) New Jersey condones process upon entireties property by an individual spouse's creditor;

the property in question is not exemptible by the Debtor.

Further, since the property is presently in the form of personalty (i.e. monthly mortgage payments culminating in a final balloon payment), and is easily susceptible to partition, the creditor cannot cause any injury to the non-debtor spouse by proceeding against the Debtor's interest thereon.

■ Therefore, we find that the Debtor cannot claim his exemption in this mortgage.

## II. OBJECTION TO CLAIM AND SETOFF

Gordon's holds three (3) judgments against the Debtor, the balance due on said judgments being $40,898.23. This amount represents the remaining liability on the judgments assigned to Gordon's by the New Jersey Division of Taxation.

The Debtor has raised three objections to Gordon's claim:

1) As the Debtor owned only a fifty percent (50%) interest in the corporation, and received less than fifty percent (50%) of the net sale proceeds, it is inequitable to satisfy the six (6) Palleys' judgments for $5,000, and hold the Debtor liable for over $40,000.00;

2) As Gordon's had a responsibility under the New Jersey Statutes to report the bulk sale, or be held responsible for any of the seller's liabilities, and as Gordon's did not comply with the statute as required, Gordon's should only be able to assert a pro rata claim against the Debtor; and,

3) The Debtor worked for Gordon's during a one-month transition period, for which he was to be paid $2,000.00. As said money was not paid, the Debtor asserts that any claim allowed to Gordon's be reduced by $2,000.00 to allow for a setoff.

Gordon's responded with the following arguments:

1) The defenses and offset raised by the Debtor are barred by the principles of res judicata and collateral estoppel;

2) The Debtor and Norman and Julian Palley were jointly and severally liable on the debt to Gordon's, and at most, the Debtor is entitled to a $5,000.00 credit for the amount received in settlement with the Palleys, said credit already having been applied;

3) The New Jersey Statute was promulgated for the benefit of creditors, not sellers, and, as the Debtor requested that Gordon's not comply with the traditional bulk sales requirements, he

cannot now use lack of compliance to his benefit; and,

4) The Debtor is not entitled to the $2,000.00 wage, because he did not perform the duties to which he agreed.

The Uniform Enforcement of Judgments Act, as adopted in Pennsylvania at 42 Pa.C. S.A. § 4306, provides that any foreign judgment of a United States court, or of any other court which requires the payments of money is entitled to "full faith and credit", provided, of course, that the procedures for filing said judgment in Pennsylvania have been followed. *Everson v. Everson*, 264 Pa.Super. 563, 400 A.2d 887 (1979). This entitles these judgments to full recognition and res judicata affect. *Morris Lapidus Associates v. Airportels, Inc.*, 240 Pa.Super. 80, 361 A.2d 660 (1976). Such judgments can only be attacked on the following grounds:

1) lack of jurisdiction;

2) fraud;

3) collusion; or,

4) duress.

*In re Fazio*, 41 B.R. 865 (Bktcy.E.D.Pa. 1984); *In re Great Eastern Express, Inc.*, 37 B.R. 579 (Bktcy.M.D.Pa.1984).

The fact that the judgments were entered by default does not preclude the application of res judicata. *Somportex Ltd. v. Philadelphia Chewing Gum Corporation*, 453 F.2d 435 (3rd Cir.1971); *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972); *In re Bystrek*, 17 B.R. 894 (Bktcy.E.D.Pa.1982).

■ The Debtor has made no attempt to strike or open these judgments. Neither has the Debtor alleged any lack of due process nor any of the tortious reasons for permitting these judgments to be collaterally attacked. It appears to the Court, therefore, that these judgments must be permitted to stand.

While we take the position that res judicata does apply, we address the merits in order to show that even there the Debtor must fail. However, this res judicata determination does not apply to the Debtor's claim of offset for $2,000.00, as the claim for wages did not arise out of the same cause of action.

■ The Debtor alleged that to allow Gordon's to pursue him for $40,898.23, while accepting only $5,000.00 from Norman and Julian Palley, would be to permit an extreme injustice. Such is not the case. The Debtor, and the Palleys, as co-owners of the three corporations, were jointly and severally liable for the debt owed to the New Jersey Division of Taxation and subsequently assigned to Gordon's. Gordon's, therefore, has the right to pursue any of the debtors, so long as the total amount received by Gordon's does not exceed $45,-898.23. If any one of the debtors pays more than his proportionate share of the debt, he is free to seek contribution from the other joint debtors.

Gordon's stated that the $5,000.00 settlement was agreed to because it appeared that its action against the Palleys suffered from some due process afflictions. This certainly is a sufficient reason to reach a settlement. However, whether such explanation was or was not proffered, the fact remains that Gordon's has the right to exercise its business judgment in determining whom to pursue.

After paying the debt to Gordon's, the Debtor may seek contribution from the Palleys. Gordon's satisfaction of the Palleys' judgments is merely a reflection of the obligation between those parties. It in no way affects the remaining obligation between the Palleys and the Debtor.

■ The Debtor further alleges that Gordon's claim, if allowed at all, should be reduced to reflect its transferee liability pursuant to New Jersey Statutes Annotated § 54:32B–22(c), which states:

(c) Whenever a person required to collect tax shall make a sale, transfer, or assignment in bulk of any part or the whole of his business assets, otherwise than in the ordinary course of business, the purchaser, transferee or assignee shall at least 10 days before taking possession of the subject of said sale, transfer or assign-

ment, or paying therefore, notify the director by registered mail of the proposed sale and of the price, terms and conditions thereof whether or not the seller transferrer or assignor, has represented to, or informed the purchaser, transferee or assignee that he owes any tax pursuant to this act, and whether or not the purchaser, transferee or assignee has knowledge that such taxes are owing, and whether any such taxes are in fact owing.

Whenever the purchaser, transferee or assignee shall fail to give notice to the director as required by the preceding paragraph, or whenever the director shall inform the purchaser, transferee or assignee that a possible claim for such tax or taxes exists, any sums of money, property or choses in action, or other consideration, which the purchaser, transferee or assignee is required to transfer over to the seller, transferrer or assignor shall be subject to a first priority right and lien for any such taxes theretofore or thereafter determined to be due from the seller, transferrer or assignor to the State, and the purchaser, transferee or assignee is forbidden to transfer to the seller, transferrer or assignor any such sums of money, property or choses in action to the extent of the amount of the State's claim. For failure to comply with the provisions of this section the purchaser, transferee or assignee, in addition to being subject to the liabilities and remedies imposed under the provisions of the Uniform Commercial Code, Title 12A of the Revised Statutes of New Jersey, shall be personally liable for the payment to the State from the seller, transferrer or assignor, and such liability may be assessed and enforced in the same manner as the liability for tax under this act.

The purpose of this provision, creating liability for Gordon's as bulk sale purchaser, is to cause said purchaser to assist the Division of Taxation in its collection of taxes due and owing. *See Bunting v. Director, Division of Taxation*, 1 N.J. Tax 189, 422 A.2d 815 (1980). This legislation

was drafted to benefit the state taxing authority, not the bulk sale seller. This language is admittedly broader than that included in the Uniform Commercial Code. However, the Uniform Commercial Code language, transferring the initial burden for payment of unsatisfied debt to the bulk sale purchaser, has been interpreted, by one circuit court, as being included solely for the benefit of the business's creditors. *See Johnson v. Mid States Screw & Bolt Company*, 733 F.2d 1535 (11th Cir.1984).

In either case, the provisions creating transferee liability in a bulk sale have not been found to be for the seller's benefit. It appears, therefore, inappropriate for the Debtor, as the bulk sale seller, to raise this provision in his defense.

Furthermore, from the testimony received at trial, the Court concludes that one of the primary reasons for Gordon's noncompliance with the New Jersey statute was its acquiescence to the Debtor's request to forego the bulk sale requirements in order to allow the Debtor to take care of those matters himself. The testimony offered by Gordon's and accepted by the Court indicated that, had Gordon's instructed its counsel to comply with the bulk sales requirements of the New Jersey Statutes, counsel would subsequently have become cognizant of, and complied with, the aforementioned taxation section.

The Court cannot release the Debtor from liability for which it remains responsible due to its involvement in said noncompliance. Equity does not so permit.

■ Finally, we turn to the Debtor's requested $2,000.00 offset, representing consulting fees allegedly due and owing. The Debtor and Gordon's agree that they entered into a verbal arrangement, whereby, in consideration of $2,000.00, the Debtor would serve for one month as a consultant to Gordon's, to assist in the general business transition and in determining the losses incurred due to a theft. The agreement required the Debtor to maintain an office with a telephone, to check in with Gordon's

management on a daily basis, and to generally be available if needed.

The Debtor testified he complied with the arrangement; however, he offered no substantiating evidence. The testimony offered by Gordon's challenges the Debtor's claim. Mr. Lowry Barfield, the Vice Chairman, Secretary and Financial Director of Gordon's, testified that the Debtor continually failed to cooperate, by not making himself available and not returning telephone calls. Additionally, Mr. Barfield testified that before the one-month service period in question was completed, the Debtor's telephone service was discontinued. The Court finds Mr. Barfield's testimony to be most credible, and therefore, disallows the Debtor's claimed setoff.

### III. OBJECTION TO DISCHARGE

Gordon's has objected to the Debtor's discharge under §§ 727(a)(2)(A) and 727(a)(4)(A). The specific allegations are as follows:

1) the Debtor sold his individually owned car, paid the creditor holding the security interest and deposited the remaining proceeds in a joint checking account, and used those funds to pay various creditors to whom he was jointly indebted with his wife;

2) the Debtor did not disclose this transaction on his Statement of Affairs; and,

3) the Debtor did not disclose the Pennsylvania and New Jersey judgments held by Gordon's or the execution proceeding against him on his Statement of Affairs.

Section 727, the very breath of the "fresh start" created by the Bankruptcy Code, is one of the most powerful portions of the statute. A denial of a discharge is an act of mammoth proportions, and must not be taken lightly. In light of this gravity, this Court and many others have stated that § 727 must be construed liberally in favor of the debtor and against the objector. *Matter of Brooks,* 58 B.R. 462 (Bktcy. W.D.Pa.1986); *In re Shebel,* 54 B.R. 199 (Bktcy.D.Vt.1985); *In re O'Connor,* 32

B.R. 626 (Bktcy.E.D.Pa.1983). Gordon's, therefore, has the burden of proving its objections. Bankruptcy Rule 4005. *Matter of Brooks, supra.* This Court previously stated the burden thusly:

The evidence must be such that, when considered in light of all the facts, the Court concludes that "the debtor has violated the spirit of the bankruptcy laws and should therefore be denied the privilege of eliminating the legal obligation of his debts".

*See, Matter of Brooks, supra,* quoting *In re Cohen,* 47 B.R. 871 (Bktcy.S.D.Fla.1985).

The first objection to discharge is brought pursuant to § 727(a)(2)(A), which states:

a) The Court shall grant the debtor a discharge, unless ...

(2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed ...

(A) property of the debtor, within one year before the date of the filing of the petition ...

Gordon's must therefore prove that: 1) the Debtor transferred or concealed property; 2) the property belonged to the Debtor; 3) the transfer or concealment occurred within one year of the filing of the petition; and, 4) the Debtor intended to hinder, delay or defraud a creditor. *Matter of Brooks, supra; In re Shumate,* 55 B.R. 489 (Bktcy. W.D.Va.1985).

The following facts are admitted:

1) The Debtor owned a 1981 Lincoln Mark VI automobile in his individual capacity.

2) The Debtor made monthly payments of $521.46 to Ford Motor Credit Corporation, which held a secured interest in said automobile.

3) The car was sold on July 30, 1984, for $12,500.00.

4) The Debtor paid the secured creditor $8,896.50, in satisfaction of that debt.

5) The remaining sale proceeds of $3,603.50 were deposited to the Debtor's checking account, held jointly with his wife.

6) These funds were used to pay the joint debts of the Debtor and his wife, as follows:

| a) | VISA | $ 2,239.10 |
|---|---|---|
| b) | Robinson's | 503.55 |
| c) | Tucker, Arensberg | 451.40 |
| d) | Horne's | 400.00 |
| | Total | $ 3,594.05 |

7) The Debtor's bankruptcy petition was filed on November 14, 1984.

Clearly, the Debtor transferred his property within one (1) year of the filing of his bankruptcy petition. The only remaining issue to be resolved is whether the Debtor had the requisite intent to hinder, delay or defraud a creditor. The Court does not believe that Gordon's has met its burden on that point. Gordon's reliance upon our decision in *Brooks* is legally appropriate, but factually misplaced.

In *Brooks,* we listed a number of elements which might be considered "badges of fraud", including:

1) an absence or negligible amount of consideration;

2) the value taken from the estate;

3) the time of the transfer;

4) the relationship between the Debtor and the transferee;

5) the debtor's financial condition;

6) the concealment of the transaction; and,

7) the existence of a threatened or pending collection lawsuit.

*Matter of Brooks, supra; In re Peery,* 40 B.R. 811 (Bktcy.M.D.Tenn.1984).

While it is admitted that the general character of this bankruptcy case has at times strained the Court's credulity, it appears that these instances of fraud are not as clear in this case as they were in *Brooks.* In *Brooks,* the debtor transferred property with a book value of $143,000.00 for $500.00. This is clearly negligible consideration, and indicates a significant value removed from the estate. In the case at bar, the Debtor used all but $9.45 of the sale proceeds to pay creditors to whom he was jointly liable with his wife. "Mere intent to prefer one creditor over another is not sufficient to support an action under § 727(a)(2)." *In re O'Connor, supra.* Similarly, in *Brooks* the debtor transferred the property to his son, and was completely removed from any ownership in said property. In the case at bar, the Debtor transferred his property to himself and his spouse; granted, a separate entity, but not beyond his custody and control.

It is not clear that the Debtor's financial condition was desperate at the time of transfer. Testimony at trial showed that at that time the Debtor was employed and no longer needed the automobile, as he had access to a vehicle through his employment. Furthermore, at the time the car was sold, the Debtor was receiving monthly mortgage payments, and was maintaining one residence in Pennsylvania and another in Florida.

There is no indication that the sale of the automobile was concealed. The secured creditor was paid, and the remaining funds were used to pay other creditors. Gordon's took depositions of the Debtor in April of 1984, and was fully aware of the car's existence for several months prior to its sale, making no effort to execute upon it until late in July of 1984. That the Debtor sold it before Gordon's completed its action is not indicative of hindrance, delay or fraud.

Given these facts, the existence of a threatened collection lawsuit as an additional element is not sufficient to persuade this Court that the sale of the car and subsequent deposit of funds was intended to hinder, delay or defraud Gordon's.

Gordon's has also objected to the Debtor's discharge pursuant to § 727(a)(4)(A), which states:

(a) The court shall grant the debtor a discharge, unless . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case
...

   (A) made a false oath or account.

■ Gordon's must show that the Debtor's oath was knowingly and fraudulently made, and that the oath related to a material fact. *Matter of Brooks, supra; In re Lineberry*, 55 B.R. 510 (Bktcy.W.D. Ky.1985); *In re Kessler*, 51 B.R. 895 (Bktcy.D.Kan.1985). This Court believes the burden of proof for denial of discharge under § 727(a)(4)(A) is greater than that under § 727(a)(2)(A). Therefore, if a false statement or omission of fact in the Schedules or Statement of Affairs is due to mistake or inadvertence, the discharge should not be denied.

> The objecting creditor must prove by a preponderance of the evidence that the debtors made the false statement fraudulently, that is, specifically with intent to deceive ... Debtors [discharge] will not be denied because information was missing or inaccurate, but because information was omitted or altered with the specific purpose of working a fraud ...

*In re Shebel, supra.*

■ In the case at bar, no such actions are proven. The Debtor's claim that failure to list the Lincoln Continental, its subsequent sale, and the use of the proceeds was inadvertent, is plausible. Gordon's makes an attempt to refute this by stating that due to the activities occurring within the eight months prior to the bankruptcy, including depositions and execution, the Debtor could not possibly have mistakenly omitted this information. However, Gordon's has not shown that the Debtor intended to commit fraud. The Debtor used the sale proceeds to pay the secured creditor and to pay other creditors to whom he was jointly indebted with his wife. The Debtor did not sell the vehicle and spirit away the money without paying any debts.

■ As to the omission on the Statement of Affairs relating to the New Jersey and Pennsylvania judgments, the Court is equally unpersuaded that this was done knowingly and fraudulently. Had the Debtor truly desired to deceive his creditors, he would not have listed the New Jersey garnishment proceeding. Furthermore, the Debtor testified that this supposedly deceptive activity was fully explained at the first meeting of creditors. While such information cannot undo the false oath, it does provide an inference that requisite intent was lacking. *See In re Shebel, supra.*

We therefore find that the Debtor should not be denied his discharge in bankruptcy.

## IV. OBJECTION TO DISCHARGEABILITY

Gordon's asserts that its claim should be held to be nondischargeable under §§ 523(a)(1)(A) and 523(a)(2)(A). We address each individually.

Section 523(a)(1)(A) states in pertinent part:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>    (1) for a tax ...—
>      (A) *of the kind* ... specified in section ... 507(a)(6) [1] of this title, whether or not a claim for such tax was filed or allowed;

(emphasis added).

■ Gordon's argues that since it received the assignments of judgments from the New Jersey Division of Taxation, and since that taxing body's claim would be considered nondischargeable, Gordon's should be subrogated to that nondischargeable status.

The Debtor argues that Gordon's is not entitled to this subrogated status, claiming that this status is for governmental entities only. The very face of the various sections of the Bankruptcy Code speak otherwise.

---

1. The enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, included a new section 507(a)(5)—therefore shifting the following sections, so that section 507(a)(6) is now section 507(a)(7).

Section 523(a)(1)(A) holds nondischargeable any debt for a tax *of the kind* specified in § 507(a)(6).[2] We read this as it is stated— that the taxes held nondischargeable are the same taxes listed as having priority status under § 507—not that the priority itself has any effect on the debt's nondischargeable status.

Section 507(a)(7)(C) states in pertinent part:

(a) The following expenses and claims have priority in the following order: ...

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for— ...

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity.

Later in the same section, the Code states:

(d) An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsections (a)(3), (a)(4), (a)(5), or (a)(6)[3] of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

11 U.S.C. § 507(d).

This section evidences two things to this Court:

1) a tax claim *can* be subrogated; and,

2) the subrogee is not entitled to the subrogor's priority status.

If another entity, such as Gordon's, could not be subrogated to a tax claim, the language including tax claims in § 507(d) would be unnecessary. As it must be assumed that Congress would not include superfluous language in the statute, it must be given its clear meaning.

Clearly then, it appears to this Court that Gordon's has a right to be subrogated to the right of the New Jersey Division of Taxation, to the extent of having its claim be held nondischargeable.

The Debtor argues that Gordon's was really a co-Defendant, with the Debtor,

which paid the New Jersey tax based on its transferee liability, discussed in Section II of this Opinion. While the Court has previously explained its reasons for finding the Debtor's equitable claims here inappropriate, we find that even if this characterization were appropriate, Gordon's would still have the rights requested, under § 509(a) of the Code which states:

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor, on, or that has secured a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

As Gordon's paid the taxing authority, it is subrogated to the taxing body's right to payment, which includes the right to have the payment held to be nondischargeable. Furthermore, as stated in Section II of this Opinion, the Debtor, upon payments of this debt, will have rights against the Palleys for contribution.

We now turn to Gordon's objection under § 523(a)(2)(A) which states in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual from any debt— ...

(2) for money ... to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

In order to succeed on this count, Gordon's must prove that the representations made by the Debtor were false, or were made with reckless disregard for their veracity; that the Debtor knew said representations were false, or made without regard to their veracity, but made them so as to induce Gordon's reliance; that Gordon's did in fact so rely; and, that Gordon's has suffered resultant damages. *See In re Kimzey*, 761 F.2d 421 (7th Cir. 1985); *Birmingham Trust National Bank*

2. See Footnote 1.

3. See Footnote 1.

*v. Case,* 755 F.2d 1474 (11th Cir.1985); *In re Pedrazzini,* 644 F.2d 756 (9th Cir.1981).

 Gordon's has alleged that the Debtor executed sworn affidavits, attesting that, at the time of closing the sale of the three Palley's corporations, the following would be true:

1) none of the corporations would have any remaining unpaid creditors;

2) none of the corporations would be indebted to any taxing authority; and,

3) none of the corporations would have any outstanding litigation.

Gordon's further alleges that the Debtor made these statements with reckless disregard for their truthfulness. This is supported by the Debtor's testimony that he was personally responsible for the day-to-day operations of the corporations, and that he was personally responsible for signing all checks drawn on the corporate account. Furthermore, a representative of Gordon's testified that the taxes for which it incurred liability, totaling $45,898.23, represented close to $750,000.00 in sales. As the primary officer in charge of the day-to-day operations of the business, it is not possible to believe that the Debtor was unaware that no taxes had been paid. The Debtor testified that he had delegated the responsibility for payment of taxes to a subordinate—however, the Debtor was responsible for business operations, and he must be held accountable for supervision, and when necessary, investigation into his subordinate's performance.

It is further clear from the language of the Agreement of Sale and the three (3) Bills of Sales, that Gordon's required the Debtor's affidavit as to the issues of creditors, taxes, and litigation, and that Gordon's would not have proceeded with the sale without such an affidavit. This is evidence that the Debtor might intend to exhibit reckless disregard for the truth of the averments in the affidavits, to induce Gordon's to close on the deal. Evidence of reckless disregard may be obtained from circumstantial evidence, since more direct evidence of the Debtor's state of mind is not available. *In re Fenninger,* 49 B.R. 307 (Bktcy.E.D.Pa.1985).

It is clear that Gordon's relied on those affidavits to its detriment. First, it was clear to the Debtor that Gordon's would not close without these verifications. Furthermore, the Debtor induced Gordon's into noncompliance with the bulk sale requirements. The result of said noncompliance was Gordon's transferee liability to the New Jersey taxing authority. It is further clear that had Gordon's been aware of the New Jersey statutory notice requirement—and it appears to the Court that had Gordon's complied with the Uniform Commercial Code requirements, it would have been aware—Gordon's would have proceeded forthwith. It was only upon the request of the Debtor that said compliance was foregone. As a result, the Debtor will continue to be responsible for his reckless and deceitful actions.

An appropriate Order will be issued.