In re George Gilbert HENDRICKSON, Sr., ind. d/b/a George and Sons Trucking and Lulu Ardella Hendrickson, Debtors.

James R. WALSH, esq., Trustee of the Bankruptcy Estate of George G. Hendrickson, Sr., ind. d/b/a George and Sons Trucking and Lulu A. Hendrickson, Plaintiff,

v.

George G. HENDRICKSON, Sr., ind. and d/b/a George and Sons Trucking and Lulu A. Hendrickson, husband and wife, Defendants.

Chapter 7 Bankruptcy
No. 91–04274 JKF.
Adv. No. 93–2139 JKF.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 12, 1993.

James R. Walsh, trustee and counsel for plaintiff-trustee.

William F. Patterson, Johnstown, PA, for defendants-debtors.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court involves Trustee's effort to revoke the discharge of Debtor on the basis that it was granted due to fraudulent concealment of estate property. The relevant facts are undisputed. The parties have submitted the matter for resolution on the pleadings, briefs, oral argument, and deposition transcript of the Debtor, George Hendrickson, dated June 4, 1993.

### Facts

George Hendrickson (hereinafter "Debtor") and his wife, Lulu A. Hendrickson,[1] filed a voluntary petition for bankruptcy under Chapter 7 on November 20, 1991. Pre-petition transfers, issued by check on or about November 18 and 19, 1991, in the amount of $2,423.00 were made by Debtor to Robert Rose (hereinafter "Rose"), Debtor's son-in-law.[2] Nine checks, written between the dates November 21 and December 6, 1991, of a total amount of $39,866.66 were transferred post-petition by Debtor to Rose as well. Most of the checks indicate that the transfers were for purchases of goods of one type or another. However, Rose did not use the funds for the specified purposes; rather Rose negotiated the checks and returned the cash to Debtor. Debtor then used the funds to satisfy various outstanding gambling debts, none of which are listed in his schedules, and to continue to gamble. *See* Deposition Transcript at 15, 20, 21, 22. Debtor also failed to disclose in his schedules the existence of the bank account on which the checks were drawn. He did not mention them to Trustee at or after the § 341 meeting. He thus

was able to deplete the account post-petition of $39,866.66. Prior to Trustee becoming aware of these facts, the court issued a discharge order dated March 19, 1992. This complaint was filed on March 10, 1993.

### Discussion

In the answer to Trustee's complaint, Debtor admits the existence of the amount of the transfers which he ultimately used to satisfy gambling debts and the nondisclosure of the account on which the checks were drawn. Based on these admissions, Trustee contends that the discharge which was entered before Trustee discovered the facts under discussion should be revoked. Section 727 provides, in relevant part, that

(a) the court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, ... or concealed ...—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition; ...

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account, ...

(d) On request of the trustee ... the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge; ....

11 U.S.C. § 727.

Debtor avers in his defense that he is a habitual gambler and thus lacked the intent

---

1. Mrs. Hendrickson died after the Chapter 7 petition was filed.

2. Trustee previously sought and was awarded against Rose a judgment to recover these transfers under §§ 547, 548, 549 and 550 of the Bankruptcy Code. *See* Adversary No. 93–2138, "James R. Walsh, Trustee, vs. Robert Rose."

to defraud. Debtor claims that his fear of reprisal if he failed to pay his unnamed gambling creditors was his incentive for not disclosing the transfers and bank account. (Deposition Transcript at 18–19, 23–24, 28–29.) His deposition establishes that in addition to paying pre-petition debt, Debtor also used money from the checks to continue his gambling activities. (Deposition Transcript at 15, 20, 21, and 22.)

■ We find that Trustee has met his burden of proof and has established Debtor's intent to hinder, delay and defraud both his creditors and the Trustee. The opinions in *In re Goldstein*, 66 B.R. 909, 917 (Bankr.W.D.Pa.1986), and *In re Tarle*, 87 B.R. 376, 378 (Bankr.W.D.Pa.1988), set forth four elements to be proven: (1) the debtor transferred or concealed property; (2) that belonged to the debtor; (3) which transfer occurred within one year of the petition date; and (4) the debtor intended to hinder, delay or defraud by his conduct. Trustee proved all these elements. We will revoke the discharge pursuant to §§ 727(a)(2), (4) and (d).

■ The purpose of a discharge is to "release an honest debtor from his financial burdens and to facilitate the debtor's unencumbered 'fresh start'." *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir.1993). This debtor has been anything but honest and does not fall within the class of poor but honest debtors for whom the bankruptcy law awards a discharge. His sole excuse for his conduct is based upon his fear of reprisal. This motivation, however, does not explain his abject disregard of his theft of estate funds and his use of the money to continue to gamble with the very same unnamed persons he so strongly fears.

■ Trustee must prove Debtor's intent to defraud. Absent an express admission of intent, Trustee can do so only by reference to circumstantial evidence and Debtor's actions. *See In re Tarle*, 87 B.R. 376, 378 (Bankr.W.D.Pa.1888); *Matter of Brooks*, 58 B.R. 462, 465 (Bankr.W.D.Pa.1986). This is especially so in cases such as this where Debtor has denied any intent

to defraud. Trustee established and Debtor admitted that Debtor knowingly and intentionally failed to disclose the bank account and its contents in the bankruptcy petition and schedules. Post-petition, Debtor improperly and without any legal authority or entitlement, wrote checks to Rose totaling $39,866.46 and notated them with false memos indicating that the checks were used to pay expenses of his trucking business. (Deposition Transcript at 16, 21.) Rose then cashed the checks and gave the money to Debtor, who paid it over to non-priority, unsecured creditors who were not identified in the bankruptcy papers, and have not yet been identified, in order to repay gambling debts. Debtor acted with the intent to mislead Trustee and creditors and to conceal the truth. Debtor admitted that he deliberately put false notations on the checks to deceive anyone who would see the checks and to hide the extent of his gambling habit. (Deposition Transcript at 16, 21–22.) Pre-petition, within two days prior to the bankruptcy, Debtor wrote $2,423.00 in checks to Rose but received back the cash and used it to pay gambling debts. He did not disclose these transfers in his schedules.

■ Debtor admits that he purposely concealed his actions. His signature on the schedules and statement of affairs, which did not include information concerning the assets used to make the transfers and the fact of the transfers themselves, pursuant to § 727(a)(4) constitutes a knowing and fraudulent false oath with respect to a material fact, *i.e.*, the existence and location of a significant asset. *In re Tarle*, 87 B.R. at 379. Thus, pursuant to §§ 727(a)(2), (4) and (d), the discharge will be revoked because of Debtor's fraud. He obtained his discharge only because of his fraud, and Trustee, an officer of the court, did not know of such fraud, concealment of assets and fraudulent transfers until after the granting of the discharge.

This case represents a clear case of non-disclosure of assets and post-petition fraudulent behavior by a debtor which was com-

pletely devoid of all legal right.[3] We must not lose sight, amongst all the legal phrasing, that when Debtor failed to disclose and then transferred $39,866.66 post-petition he stole a major asset from the estate. When Debtor falsely recorded on most of the checks that they were issued to pay for inventory and other business purchases when, in fact, he paid pre-petition gambling debts and/or continued to gamble with the proceeds, he deliberately deceived Trustee. Worse yet, Debtor tried to excuse such blatant misconduct on the premise that "everyone knows that gambling debts to professional gamblers must be paid." Defendants' Brief at unnumbered third page. *See also* Deposition Transcript at 23–24, 28–29. This narrow reasoning is specious, particularly in the context of a bankruptcy. The Bankruptcy Code affords no priority in distribution to gamblers and no exception to the mandatory denial of discharge in § 727 when a debtor has knowingly and fraudulently concealed and transferred assets for his own purposes, to the detriment of creditors. A debtor may not file a bankruptcy petition, misappropriate assets from the estate, make false oaths about his assets and liabilities and otherwise subvert and tarnish the bankruptcy process to protect his self-interest from his unnamed but purportedly unscrupulous gambling creditors—creditors with whom he knowingly and voluntarily became and continued to be involved.

By vacating the discharge in this case, we hope to deter such conduct by other debtors, as well as to enforce the Code with regard to this debtor. In the future, should a debtor be in a similar position of having to choose whether to pay a gambling debt and abuse the bankruptcy process, or to adhere to the law, perhaps the consequences visited upon this debtor will lead to a decision in accord with the bankruptcy law and the recognition that bankruptcy law stands on more elevated ground than Debtor accorded it in this case.

An appropriate order will be entered.

### ORDER

And now, to-wit, this **12th** day of **July, 1993,** for the reasons set forth in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED AND DECREED** that the discharge entered on **March 19, 1992,** in favor of **GEORGE G. HENDRICKSON, SR.,** is **REVOKED AND VACATED** and **GEORGE G. HENDRICKSON, SR.,** remains liable for all of his pre-petition debts. Debtor is not entitled to a discharge, and none shall be granted.

The Clerk shall close this Adversary.

---

**3.** In his deposition, Debtor states that he thought he told his attorney about the existence of the bank account but did not know how much money was in it. Deposition Transcript at 8–9. The testimony is unbelievable inasmuch as the transfers at issue herein occurred within two days pre-petition and within sixteen or seventeen days post-petition. Debtor failed to explain why, having allegedly informed his counsel about the bank account, he did not call the omission of the account from the schedules to his counsel's attention. If he had told his attorney about the account, this error would have been corrected at the outset. Disclosure, however, would have enabled Trustee to take control of the account and to prohibit Debtor from dissipating the funds. Debtor owned and operated his own trucking business, was aware of this account, and used it in his business before filing bankruptcy.