FERGUSON, Circuit Judge:
 

 Cloyd and Barbara Devers (“Debtors”) were denied a general discharge in bankruptcy for fraudulent conduct which violated 11 U.S.C. § 727. The district court affirmed, and this appeal followed. We affirm.
 

 FACTS
 

 In August 1981, Debtors filed a voluntary joint petition under Chapter 11 of the
 
 *753
 
 Bankruptcy Code.
 
 [1]
 
 They became debtors-in-possession of their hog breeding facility and continued the operation, pursuant to 11 U.S.C. §§ 1107, 1108. In April 1981, the Debtors had borrowed $94,802 from the Bank of Sheridan, Montana (“Creditor”), and had pledged their livestock, ranch equipment and supplies as security for the loan.
 
 [2]
 

 Shortly after the Chapter 11 filing, the Creditor learned that the Debtors were selling the secured livestock in violation of the security agreement, and the Creditor sought relief from the automatic stay in order to repossess its security.
 

 At a hearing on the Creditor’s motion, Cloyd Devers admitted he was selling the livestock and putting the money into his regular bank account, and that he had not informed the Creditor of these sales. The Debtors were specifically told by the court to notify the Creditor within five days of selling any secured property and to cease commingling the funds earned from the sales.
 

 In August 1982, the reorganization failed, and the court converted the proceeding to a Chapter 7 liquidation. When the Creditor repossessed its security, most of the livestock had been sold
 
 [3]
 
 and some ranch equipment was missing.
 
 [4]
 
 The Creditor then began an adversary proceeding under 11 U.S.C. § 727 to deny a discharge to these Debtors for conduct which manifested an intent to hinder, delay or defraud the Creditor by selling the security without notice.
 

 STANDARD OF REVIEW
 

 We review a bankruptcy court’s findings of fact by the clearly erroneous standard, but its conclusions of law are subject to
 
 de novo
 
 review.
 
 In re American Mariner Industries, Inc.,
 
 734 F.2d 426, 429 (9th Cir.1984).
 

 DISCUSSION
 

 The bankruptcy court denied a general discharge pursuant to 11 U.S.C. § 727(a)(2)(B), which states in relevant part:
 

 (a) The court shall grant the debtor a discharge unless—
 

 (2) the debtor, with intent to hinder, delay or defraud a creditor ..., has transferred, removed ... or concealed,
 

 (B) property of the estate, after the date of the filing of the petition; ....
 

 The cases interpreting the statute have held that actual intent to hinder, delay, or defraud must be shown. Constructive fraudulent intent cannot be the basis for denial of discharge,
 
 In re Adlman,
 
 541 F.2d 999, 1003 (2d Cir.1976), but fraudulent intent may be established by circumstantial
 
 *754
 
 evidence, or by inferences drawn from a course of conduct.
 
 Farmers Co-op Association v. Strunk,
 
 671 F.2d 391, 395 (10th Cir.1982). The statute is to be construed liberally in favor of debtors and strictly against the objector.
 
 In re Adlman,
 
 541 F.2d at 1003;
 
 In re Rubin,
 
 12 B.R. 436, 440 (Bankr.S.D.N.Y.1981).
 

 The Debtors deny that their conduct was intentionally fraudulent, but insist it was an attempt to conduct their business as usual pursuant to 11 U.S.C. §§ 1107, 1108. Cloyd Devers testified that he was just “culling” his stock when he sold them. He admitted his failure to report the sales as required or to segregate funds, but he characterized his behavior as “negligent failure” only, and urged this court to accept his self-serving statement of his intent as the best evidence of that intent. We decline to do so.
 

 Because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce fraudulent intent from all the facts and circumstances of a case.
 
 In re Nazarian,
 
 18 B.R. 143, 146 (Bankr.D.Md.1982). The Debtors here repeatedly sold secured assets of the estate without reporting the sales. As in
 
 Nazari-an,
 
 the numbers and magnitude of these sales eliminate any possible finding of mere negligence that could vitiate the inference of intent.
 
 Id.
 
 at 150.
 

 A debtor-in-possession has the duty to protect and conserve property in his possession for the benefit of creditors.
 
 In re Halux, Inc.,
 
 665 F.2d 213, 216 (8th Cir.1981). He is authorized by 11 U.S.C. § 363 to sell things “in the ordinary course of business,” but, otherwise, property of the estate may not be sold without notice or hearing. We agree with the bankruptcy court that selling off all the breeding stock is not “culling” and is not “in the ordinary course of business” for a breeding facility. That these Debtors continued to sell the livestock after the court specifically instructed them to cease is intentional conduct which evidences a fraudulent intent.
 

 The intent was confirmed by the Debtors’ blatant violation of the court’s order to cease commingling the money earned from these sales. These Debtors spent $30,000 of the money so earned to pay currently accruing operating costs and family living expenses in order to maintain some semblance of a viable operation in order to attract financing. They showed concern only with their own business survival, and therefore ignored one of the most important functions of the debtor in possession — to inform the creditors and the court of the status of the business undergoing reorganization.
 
 In re Modern Office Supply, Inc.,
 
 28 B.R. 943, 944 (Bankr.W.D.Okla.1983).
 

 The Debtors’ explanation of the garden tractor’s “disappearance” is yet another indication of their disregard of their responsibilities during the reorganization process. The Creditor proved that the Debtors once had owned the tractor, and that they did not produce it for repossession. While the burden of persuasion rests at all times on the creditor objecting to the discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case.
 
 In re Reed,
 
 700 F.2d 986, 992-93 (5th Cir.1983). A debtor’s failure to offer a satisfactory explanation when called on by the court is a sufficient ground for denial of discharge under section 727(a)(5).
 

 The bankruptcy court found Cloyd Dev-ers’ story that the tractor had just vanished in his absence to be incredible. We find no evidence that the district court clearly erred in this determination.
 

 The bankruptcy statutes have a two-fold purpose — first, to secure the equitable distribution of the bankrupt’s estate among his creditors,
 
 In re F.P. Newport Corp.,
 
 123 F.Supp. 95, 99 (S.D.Cal.),
 
 appeal dismissed,
 
 216 F.2d 344 (9th Cir.1954),
 
 cert. denied,
 
 348 U.S. 972, 75 S.Ct. 533, 99 L.Ed. 757 (1955); and, second, “ ‘to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and re
 
 *755
 
 sponsibilities consequent upon business misfortunes.’ ”
 
 Matter of Esgro, Inc.,
 
 645 F.2d 794, 798 (9th Cir.1981) (quoting
 
 Williams v. United States Fidelity & Guaranty Co.,
 
 236 U.S. 549, 554-55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915)). We recognize that denial of discharge can work a serious deprivation, but agree that “[t]his is not to be read, however, as minimizing the seriousness of the debtor’s offense in disobeying a lawful order, nor do we suggest that a blatant violation should be condoned.”
 
 In re Kokoszka,
 
 479 F.2d 990, 997 (2d Cir.1973),
 
 aff'd sub nom. Kokoszka v. Belford,
 
 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). While it is true that some courts have ignored disobedience of their orders and granted a discharge,
 
 see In re Jones,
 
 490 F.2d 452 (5th Cir.1974) (court granted discharge where debtor failed to include on Schedule A-3 the dates on which debts were incurred over Creditor’s objections), it is totally within the discretion of the bankruptcy court to find a particular violation of the court’s order so serious as to require denial of discharge. 11 U.S.C. § 727(a)(6).
 

 We see no error in the court's decision. These Debtors sought the protection of the bankruptcy court to shield them from their creditors while they reorganized. By so doing, they assumed a duty to participate in that proceeding by obeying the court’s lawful orders. This they did not do. Rather they abused the bankruptcy process and prejudiced their Creditor by disposing of its security. They now ask this court to condone their abuses by granting their discharge. We refuse to do so.
 

 AFFIRMED.
 

 [1]
 

 . 11 U.S.C. § 302 authorizes a joint case, which is commenced by an individual and spouse filing a single petition. There is no statutory provision for severing such a petition. The parties have not directed us to a single case in which this was done, nor have we found one after diligent research. Therefore, we reject Barbara Devers’ claim of error in not discharging her, as her choice to file the joint petition is determinative of this issue.
 

 [2]
 

 . The bankruptcy court found the security agreement provided that the Debtors would not "sell, transfer, lease, or otherwise dispose of the pledged collateral without the prior written consent of the Creditor.”
 

 [3]
 

 . Cloyd Devers testified that he had sold some 97 sows and 350 pigs, all secured by the bank, making the sales on at least five separate occasions after the November hearing.
 

 [4]
 

 .Two pieces of equipment are in dispute in this appeal. The Debtors allegedly disposed of a mulcher in which the Creditor had an interest within one year before the bankruptcy filing occurred. The exact date of the mulcher’s sale is not in the record and the Creditor concedes it has no knowledge of the date. Therefore, we decide this case without consideration of the mulcher, as there is no evidence its sale violated section 727.
 

 The Creditor also was unable to repossess a garden tractor in which it had an interest. It was on the Debtors’ premises originally, but had "disappeared” when the Creditor returned for it. Debtor Cloyd Devers testified he went away for a few days after the initial repossession and when he returned the tractor was gone. He thought the bank returned for it. The “disappearance” of the tractor has factual support, and is considered in the court’s opinion.