In re **ROTH AMERICAN, INC.**, Debtor.

**Bankruptcy No. 5–88–00056.**

United States Bankruptcy Court,
M.D. Pennsylvania.

Aug. 17, 1988.

John D. Doran, Robert Nowalis, Doran, Nowalis & Flanagan, Wilkes–Barre, Pa., for debtor Roth–American.

Jeffrey Baddeley, Squire, Sanders & Dempsey, Cleveland, Ohio, for Unsecured Creditors Committee.

Robert L. O'Donnell, Vandeventer, Black, Meredith & Martin, Norfolk, Va., for General Foam Plastics Corp.

C. Warren Trainor, Michael R. Gardner, Ehmann & Van Denbergh, Philadelphia, Pa., for KKP, Inc.

John J. Thomas, Thomas & Pulaski, Wilkes–Barre, Pa., for Rehabilitation Services.

John Dunn, Dunn & Byrne Law Offices, Scranton, Pa., Baptiste & Wilder, P.C., Washington, D.C., for Teamsters Local 401.

Robert Spielman, Rosenn, Jenkins & Greenwald, Wilkes–Barre, Pa., for Wilkes–Barre Indus. Development Fund.

Timothy M. Austine, Deputy Chief Counsel, Pennsylvania Dept. of Commerce, Harrisburg, Pa., for Pennsylvania Indus. Development Authority.

## MEMORANDUM AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

In this Chapter 11 proceeding, we have for consideration an Application by the debtor for an Order confirming sales to American Plastics Equipment, Inc. and Carter Footwear, Inc. The Debtor's Application was met with a number of objections and after a hearing was held on the application, together with the objections, this Court entered an Order confirming the sale on July 28, 1988. This Memorandum is written in support of the Order entered on the record during the July 28, 1988 hearing.

On February 1, 1988, Roth American, Inc. ("Debtor") filed a Chapter 11 petition. The initial activity in this case involved an Emergency Application and hearing for an order approving a post-petition financing arrangement with First Tennessee Bank, N.A. The Court approved the post-petition financing with the Bank on February 22, 1988. Thereafter, the debtor filed an Application to Approve a Contract with the Michael Fox Company to market the company on a national basis in order to obtain bids for the company in its entirety, or, in the alternative, bids for major segments of the company. Meanwhile, the Bank advised the debtor it intended to cease financing the debtor at the end of May of 1988.

The Michael Fox Company conducted an extensive national campaign to foster interest in the sale of the debtor in its entirety as a going concern and as a result the debtor, on June 2, 1988, submitted to the Court an application to confirm the sale of approximately 6.1 acres of land and improvements thereon, together with the machinery, equipment, raw inventory and work in process to General Foam Plastics Corporation (hereinafter "General Foam") for $1.7 Million. Disagreements, however, arose between the debtor and General Foam resulting in withdrawal by the debtor of its application to confirm the sale to General Foam. Meanwhile, Michael Fox Company solicited private bids for the other assets of the company and on July 18, 1988, sealed bids for those assets were opened. American Plastic Equipment, Inc. bid the sum of $700,001.00 for assets of the company consisting largely of molds, tools, machinery, equipment, inventory and other property more particularly described in its bid. The second bid was from Carter Footwear, Inc. in the total amount of $475,000.00 for the debtor's Conyngham Street real estate.

Objections to those bids were filed by Local 401 (hereinafter "Union"), the Greater Wilkes–Barre Industrial Fund, United Rehabilitation Services, Inc., KKP, Inc. and Chris Kaye Plastics Corp. Additionally, the City of Wilkes–Barre through its Mayor, Lee A. Namey, filed an objection to the sale together with an Amicus Curie Brief, but did not actively participate at the hearing on the debtor's application.

As stated, a hearing on the debtor's application and objections thereto was held on July 28, 1988. The Court ruled the debtor's application should be granted and that the objections filed to that application had no substantial merit to warrant denial of the application. The Court entered an oral Order on the record at the conclusion of the hearing.

We note that an application to approve the sale to General Foam Plastics Corporation was withdrawn by the debtor at the outset of the hearing. The objection of Chris Kaye Plastics was overruled on the basis that Chris Kaye was to be offered adequate protection in the form of a lien to be granted on the proceeds of the sale to the extent that it had such lien. United Rehabilitation Services voluntarily withdrew its objections. KKP raised a twofold objection. The first objection was that KKP asserted a contractual right to return of certain molds and a lien on those molds. As with Chris Kaye Plastics, part of the objection was overruled because KKP was to be granted a lien on the proceeds of the sale to the extent of its lien, if any. To the extent that KKP asserted a contractual right for the return of its molds, that part of the objection was also overruled pending a future order of this court determining its right to return of the molds and damages, if any, arising from an alleged breach of

contract. The objection filed by the City of Wilkes–Barre was, in fact, not technically an objection but merely a request and assertion by the City that it would be in the best interests of the City and the employees of the debtor if this Court would permit an extended time to receive other bids and offers for the business as an entirety. As such, the City reiterated concerns that all parties to this matter, both debtor and creditors, have expressed to the court.

■ The objection of the Wilkes–Barre Industrial Development Fund was based upon the existence of an interested purchaser who testified at the hearing that he was prepared to purchase the company and operate the debtor as a going concern. This particular individual received the same cooperation and consideration as all other parties who bid on the assets. Of most importance to this objection, however, was the fact that the Fund was objecting on behalf of a third party who had not, as of the hearing date, filed a bid pursuant to the bid specifications and deadlines approved by order of this Court. In short, the Fund was asserting an objection on behalf of an individual who himself, because of a failure to make a timely bid, had no standing to object to the application. As such, the Fund's objections were dismissed for a lack of timeliness and standing.

The Local 401 Union (hereinafter "Union") objections are twofold. The Union argues that the proposed sale is contrary to the Collective Bargaining Agreement which was entered into post-petition and which requires the debtor maintain operations in the Wilkes–Barre area for a period of two years ending February 4, 1990. Secondly, the Union argues the proposed sale is not in the best interest of the debtor's estate because it would effect a breach of the Collective Bargaining Agreement and create a potential administrative claim in excess of $6 Million in favor of the Union, thus leaving no assets for distribution to the unsecured creditors.

■ Concerning the Union's argument that the proposed sale is prohibited by the Collective Bargaining Agreement the Union directs our attention to language in the Collective Bargaining Agreement which provides as follows:

"The employer *will* maintain operations covered by the current collective bargaining agreement in the Wilkes–Barre area for a minimum of two (2) years, commencing upon the effective date of this Memorandum Agreement. This commitment also includes the representation that equipment necessary to the operations of these facilities *will not* be moved from the Wilkes–Barre area. (emphasis added) See Union's Brief, Exhibit A at ¶ 2(k).

The Union asserts the debtor is prohibited by the Collective Bargaining Agreement from liquidating or selling its assets piecemeal and that the debtor must continue to operate in Wilkes–Barre for a period of at least two (2) years ending February 4, 1990. Presumably, the debtor and the Union negotiated the terms of the Collective Bargaining Agreement in good faith and it was, at all times, the intention of the debtor to abide by the terms of the Agreement. However, as the case progressed, circumstances arose making strict compliance by the debtor with the Agreement simply impossible with the further consequence of the closing of the active operation of the business. (Inability of the debtor to obtain additional funding left it completely unable to continue operating). The Union also argues that should there be a breach of the collective bargaining agreement, the Union and its employees will have no adequate remedy at law because specific performance at this point and under the circumstances of the bankruptcy, would be near impossible for the debtor. The Court acknowledges the Union's concern, but, if there is such a breach, the Union's appropriate remedy for the breach will be damages leading to a possible administrative claim which the Union can assert in another proceeding in this bankruptcy. We find that a potential breach of the Collective Bargaining Agreement resulting in the possibility of damages is an issue not ripe for hearing by the Court at this time.

■ The Union's second argument is that the proposed sale is not in the best

interest of the estate. The Union asserts that its potential administrative claim will, in effect, claim all the proceeds from the sale, viz a viz, what unsecured creditors could expect in a potential distribution. In short, the Union claims that all proceeds will be relegated to payment of damages resulting from a breach of the Collective Bargaining Agreement. The Union couples this argument with an assertion that the proposed sale is a result of the bad faith of General Foam, the Michael Fox Company, and mismanagement of the debtor's estate. The Union writes that the "debtor in possession has a duty to protect and conserve the property in its possession for the benefit of the creditors." See Union's Brief at p. 6. Citing *In re Devers*, 759 F.2d 751, 754 (9th Cir.1985); *In re Halux, Inc.*, 665 F.2d 213, 216 (8th Cir.1981). We agree. We also find that the debtor acted in such a manner as to have the debtor's estate and the interest of all creditors in mind when filing the application for acceptance of the bids in question. Potentially a sale to General Foam for $1.7 Million may have been in the best interest of all creditors, but that issue has been rendered moot because of the withdrawal of the motion to accept that bid as a result of numerous problems between General Foam and the debtor concerning the bid. The debtor then moved with expedience to obtain bids on the other assets of the company. Arguably, a piecemeal sale at this time will not be in the best interest of the union, but the debtor has various creditors whose interest must be considered and protected. After due notice to all creditors, including the Union, this Court approved the contract upon which the Michael Fox Company has proceeded in this matter and its contractual rights must also be considered and protected. Of particular importance is that at no time has the Union questioned the reasonableness of the sale price of the assets in question. This is not a situation in which a creditor objects to the sale price finding it unreasonable because the fair market value of the assets will not be realized upon a sale.

Finally, after a review of the testimony and the arguments submitted by the Union and other objectors, we find that the sale price for the assets in question is reasonable and that the proposed sale is in the best interests of the debtor's estate and that the debtor, and the proposed purchasers, have acted in good faith. Further, we find that the objections have no merit and, consequently, the Court grants the debtor's application for authority to sell the assets.