**In re Robert D. RICE, Debtor.**

**CREATIVE RECREATIONAL SYSTEMS, INC., Plaintiff,**

v.

**Robert D. RICE, Defendant.**

**Bankruptcy No. 288–06827–C–7. Adv. No. 289–0037.**

United States Bankruptcy Court, E.D. California.

Dec. 29, 1989.

---

Marla J. Winterberger, Hefner, Stark & Marois, Sacramento, Cal., for plaintiff.

John R. Roberts, Placerville, Cal., for defendant.

## MEMORANDUM DECISION

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

The issue in this adversary proceeding asserting an objection to discharge is whether a chapter 7 discharge should be

denied to an individual who follows his lawyer's advice to "spend" the money in his bank accounts before filing bankruptcy. The objection will be sustained.

## FINDINGS OF FACT

The debtor filed a chapter 7 bankruptcy case on October 17, 1988, the day before a state court lawsuit against him was set for trial.

The debtor listed in his schedules average monthly gross income of $6,160.00 and monthly expenses totaling $2,232.65, a monthly surplus of $3,927.35 (less income tax and social security withholdings).

The debtor's bankruptcy counsel advised him to draw as much money as he could from his bank account and spend it.[1] He did so.

His bankruptcy counsel rendered no advice about any potential limitations on spending and transfers and did not inquire of his client about how the money was spent.

Among other "spending" by the debtor in the week before bankruptcy, he transferred $3,486.28 to his mother, who resided with him, by check dated October 13, 1988. The transfer to his mother was not revealed on the schedules.

The debtor knew that the money in his bank accounts could be reached by a creditor or bankruptcy trustee if it was still in his accounts when the bankruptcy was filed. He intended that the money that he spent or otherwise transferred in the week before bankruptcy not be available for his bankruptcy trustee and for his creditors. He knew that the trustee and creditors would be hindered or delayed.

The debtor's bankruptcy counsel is a bankruptcy specialist who regularly serves as a trustee in chapter 7 cases. Counsel knew that the money in the debtor's bank accounts could be reached by a creditor or bankruptcy trustee if it was still in the accounts when the bankruptcy was filed. He knew that they would be hindered or delayed by such actions.

## DISCUSSION

The central question in this case is whether reliance upon an attorney's advice to "spend" the funds in bank accounts shortly before filing bankruptcy creates a safe harbor against an objection to discharge based upon intent to hinder, to delay, or to defraud creditors. 11 U.S.C. § 727(a)(2)(A). The case places in focus the limits upon legal advice rendered in contemplation of bankruptcy.

A chapter 7 discharge may be denied under 11 U.S.C. § 727(a)(2)(A) only upon a finding of *actual intent* to hinder, delay, or defraud creditors. *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751 (9th Cir.1985) (hereafter, *Devers*). As the grounds for objection—hinder, delay, or defraud—are stated in the disjunctive, actual intent either to hinder or to delay or to defraud will suffice to justify denying a discharge.

■ The determination to deny a discharge is committed to the discretion of the court, taking into account the two-fold purposes of the Bankruptcy Code to secure equitable distribution of the estate among creditors and to relieve the honest debtor from the weight of oppressive indebtedness, thereby permitting a fresh start. *Devers*, 759 F.2d at 754–55. Each case is necessarily fact-bound and requires careful reflection by the court.

■ Although there is some confusion about the appropriate standard of proof, it is, as a practical matter, something greater than mere preponderance of the evidence, because the issue is to be determined in

---

**1.** Debtor's counsel elicited the following testimony from his client about the legal advice that he rendered in connection with preparing to file bankruptcy:

Q. When you first came into my office a couple of days before the petition was filed, did you disclose to me that you had any money in your checking account?

A. Yes.
Q. What was my advice to you?
A. Draw out as much as you can.
Q. And to spend it?
A. And to spend it.

light of the "fresh start" policy of the Bankruptcy Code.[2] The section is to be construed liberally in favor of debtors and strictly against those objecting to discharge. *Devers*, 759 F.2d at 754. The evidence in this adversary proceeding is clear and convincing.

■ Actual intent to hinder or delay a creditor or the bankruptcy trustee can be negated by reliance upon the advice of an attorney. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir.1986) (hereafter, "*Adeeb*"); *Hultman v. Tevis*, 82 F.2d 940, 941 (9th Cir.1936). Such reliance, however, must be in good faith. *Adeeb*, 787 F.2d at 1343.

■ A debtor who knows that a purpose of a transfer is to hinder or delay a creditor or the bankruptcy trustee does not rely in good faith upon the advice of counsel in a manner that negates the element of intent. Thus, for example, in *Adeeb* the defense of good faith reliance upon legal advice was precluded "even if the client [was] otherwise innocent of any improper purpose" because both the debtor and the attorney who counseled the offending transfers intended that creditors be hindered or delayed. *Adeeb*, 787 F.2d at 1343.

■ A debtor who, intending to file bankruptcy, deliberately spends money for the sake of spending it lest the funds otherwise fall into the hands of the bankruptcy trustee and creditors is, *a fortiori*, committing waste that has the ineluctable effect of hindering or delaying creditors. In such circumstances, advice from a bankruptcy lawyer does not create a safe harbor.

■ Legal advice to go spend money without regard to the use of the money is far removed from the type of prebankruptcy exemption planning that is designed to transform nonexempt assets into exempt assets. There is a policy argument in favor of permitting such planning, at least within limits: it implements the "fresh start" policy by permitting honest debtors to emerge from bankruptcy with the grubstake of the exemptions that are permitted by applicable law. That policy, however, clashes with the policy of equitable distribution of the estate among creditors. *See, e.g., Devers*, 759 F.2d at 754–55.

Assuming that such exemption planning is permissible, there is no evidence that there was such planning in this case.[3] The evidence is that the focus was on "spending" the nonexempt funds rather than using them to acquire exempt assets. There was no advice about correct and incorrect ways to spend the money. The money was not being spent to acquire exempt assets. Thus, the policy reason that supports prebankruptcy exemption planning is plainly inapplicable—the "spending" merely reduced the assets of the estate without correlatively increasing the exempt property with which the debtor would emerge from bankruptcy.

Counsel claimed ignorance of the disposition of the money until the time of trial when the plaintiff adduced evidence that the debtor had transferred $3,486.28 to his mother the week before filing the bankruptcy petition. Counsel conceded that this was an avoidable transfer and professed astonishment that it had been made. The debtor testified that he had no idea until

---

**2.** The legislative history of 11 U.S.C. § 727(a)(2) is misleading. It recites that "the standard of proof is preponderance of the evidence rather than proof beyond a reasonable doubt." S.Rep. No. 95–989, 95th Cong., 2d Sess. 98 (1978); H.Rep. No. 95–595, 95th Cong. 1st Sess. 384 (1977). Read in context, this is an inartful general reference to standards of proof in civil matters.

The standard in this circuit under the Bankruptcy Act was "clear and convincing" when the issue is fraud upon the trustee or upon creditors. *Love v. Menick*, 341 F.2d 680, 682 (9th Cir.1965) (objection to exemption under Bankruptcy Act). As the pertinent language of 11 U.S.C. § 727(a)(2)(A) was carried over from the Bankruptcy Act, older decisions retain vitality. 4 L. King, *Collier on Bankruptcy* ¶ 727.02[3] (15th ed. 1989); *cf. Oberst v. Oberst (In re Oberst)*, 91 B.R. 97, 100 n. 1 (Bankr.C.D.Cal.1988).

**3.** This court expresses no view as to the limits, if any, on actual exemption planning under the Bankruptcy Code. *Cf. Grover v. Jackson (In re Jackson)*, 472 F.2d 589 (9th Cir.1973); *Wudrick v. Clements*, 451 F.2d 988 (9th Cir.1971); *Love v. Menick*, 341 F.2d 680 (9th Cir.1965). *See generally Smiley v. First Nat'l Bank (In re Smiley)*, 864 F.2d 562, 566–68 (7th Cir.1989) (collecting cases).

the time of trial that there was a problem with the transfer. Moreover, the debtor testified, during examination by his counsel, about the advice from his counsel to spend the money in the bank.

The assurance with which the debtor's testimony was presented, and the apparent reliance upon *Adeeb*, suggests that there is confusion about the law regarding pre-bankruptcy advice. In *Adeeb* the debtor transferred property upon the advice of a nonbankruptcy lawyer to keep the property away from creditors. The Ninth Circuit held that there was actual intent to hinder or delay creditors. 787 F.2d at 1342–43. What saved Mr. Adeeb was that he was making a good faith effort to reverse the offending transfers, following later advice from a bankruptcy lawyer, when an involuntary bankruptcy petition was filed against him. The Ninth Circuit, however, made clear that an objection to discharge would be sustained unless he actually recovered substantially all of the transferred property within a reasonable time.[4] 787 F.2d at 1346.

The policy of *Adeeb* promotes recovery of property and is inapplicable to this case. The only legal advice that helped Mr. Adeeb's case was the advice to reverse the offending transfers and to recover the property.

The prebankruptcy advice to "spend" the money in this case was unaccompanied by any advice about legitimate exemption planning and about the risks of improper transfers. Nor does there appear to have been an effort to assure that the debtor had not spent funds improperly and to reverse any improper transactions.[5] The permissibility of exemption planning necessarily entails limits and is not to be construed as a license to waste assets.

To be sure, denial of a chapter 7 discharge is strong medicine that requires careful reflection by the court as it balances the competing interests of debtors and creditors. The Congress has provided some cushion to the denial of a chapter 7 discharge where it may work its greatest deprivation by permitting a chapter 13 discharge.[6] It appears that the debtor in this may be eligible for relief under chapter 13.[7]

In this instance, the objecting creditor has carried its burden of proof, and the court is convinced that fairness is best served by denying the discharge.

## CONCLUSIONS OF LAW

This is a "core proceeding" as to which a bankruptcy judge has the power to enter final judgment. 28 U.S.C. § 157(b)(2)(J).

The debtor transferred property of the debtor, within one year before the date of the filing of the petition, with actual intent to hinder a creditor and the bankruptcy trustee.

The debtor transferred property of the debtor, within one year before the date of the filing of the petition, with actual intent to delay a creditor and the bankruptcy trustee.

4. The Ninth Circuit unambiguously made successful recovery a precondition to defeating an objection to discharge:

> We therefore hold that a debtor who has disclosed his previous transfers to his creditors and is making a good faith effort to recover the property transferred at the time an involuntary petition is filed is entitled to a discharge of his debts if he is otherwise qualified. We emphasize that the debtor must be making a good faith effort to recover the property prior to the filing of the involuntary petition, and he must actually recover the property within a reasonable time after the filing of the involuntary petition. A debtor's failure to establish these conditions would justify relief under section 727(a)(2)(A).

*Adeeb*, 787 F.2d at 1346.

5. The assertion at trial that there would be prompt recovery of the portion of the spending that was reflected by the $3,486.28 transfer to the debtor's mother is, under *Adeeb*, too little, too late. *Adeeb*, 787 F.2d at 1346.

6. The policy of "fresh start" has its greatest force, and denial of discharge works its greatest deprivation, in the cases of individuals of limited means and resources. Most such individuals have debts that do not exceed the parameters of chapter 13—$100,000 (unsecured) and $350,000 (secured). 11 U.S.C. § 109(e).

7. The debtor's schedules in this case reflect that unsecured claims totalling about $81,000, secured claims totalling about $71,000, and surplus monthly income exceeding $3,000 that might be used to fund a chapter 13 plan.

A discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A).

An appropriate order will issue.