**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-17-1153-SKuTa |
| ZOHRA MURTAZA, ) | Bk. No.   8:14-bk-11655-TA |
| Debtor. ) | Adv. No.   8:14-ap-01199-TA |
| _____ ) | |
| ZOHRA MURTAZA, ) | |
| Appellant, ) | |
| v. ) | **MEMORANDUM**[*] |
| SHELLEY SLATEN; JOEL SIGMUND; ) LESLIE SIGMUND; QAYYUM KOCHAI,) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on March 22, 2018
at Pasadena, California

Filed – April 2, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Theodor C. Albert, Bankruptcy Judge, Presiding

Appearances:   Sally Gersten Sopkin argued for appellees Joel
Sigmund, Leslie Sigmund and Shelley Slaten.[**]

Before: SPRAKER, KURTZ and TAYLOR, Bankruptcy Judges.

_____

   [*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

   [**] No one appeared at oral argument on behalf of the appellant.  Consequently, this Panel has taken appellant's position under submission based on her appeal briefs and on the record.

**INTRODUCTION**

Chapter 7[1] debtor Zohra Murtaza appeals from a judgment after trial denying her discharge under § 727(a)(4)(A). The bankruptcy court found that Murtaza knowingly and fraudulently omitted some of her assets from her schedules. The court further found that she incorrectly reported other aspects of her finances, also with the intent to deceive her creditors. We AFFIRM.

**FACTS**

**A. The Bankruptcy Court's Prior Summary Judgment Ruling and Reversal on Appeal.**

Appellees Joel Sigmund, Leslie Sigmund, Shelley Slaten, and Qayyum Kochai, plaintiffs below, sued Murtaza under § 727(a)(4)(A) to deny her discharge for making false oaths in her schedules and Statement of Financial Affairs ("SOFA").[2] They are significant creditors of Murtaza. Three of them had obtained judgments against Murtaza collectively in excess of $4,000,000 in 2013. The judgment creditors were in the process of enforcing their judgments and had continued a judgment debtor examination to potentially compel the turnover of Murtaza's Mercedes when she filed for bankruptcy.

This is the second time this matter has been before this

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] At oral argument, counsel for appellees disclosed that Kochai has since settled with Murtaza and is no longer a party to this appeal.

2

Panel. In 2015, the bankruptcy court granted summary judgment in favor of the plaintiffs, denying Murtaza her discharge. Murtaza appealed the bankruptcy court's summary judgment ruling. We vacated that ruling, holding that the bankruptcy court erred by attempting to resolve on summary judgment genuine issues of material fact concerning Murtaza's state of mind. Murtaza v. Sigmund (In re Murtaza), Dkt. No. CC-15-1075-KuFTa, 2016 WL 1383890 (Mem. Dec.) (9th Cir. BAP Apr. 5, 2016). More specifically, we held that whether Murtaza's errors and omissions in her bankruptcy schedules and SOFA were made knowingly and fraudulently were questions that needed to be determined by the trier of fact.

On the other hand, our prior decision did not disturb other key aspects of the bankruptcy court's summary judgment ruling. Namely, we upheld the bankruptcy court's determination that Murtaza had made a number of material errors and omissions concerning her assets and finances. We identified the omissions as follows:

- An interest in her son Zaid's bank account at U.S. Bank resulting from her deposit of payroll checks into the account to avoid judgment creditors.

- An interest in a debit card account into which her employer would sometimes deposit her wages.

- An inheritance from her father's estate that was settled in her favor in 2012 in an amount between $200,000 and $350,000.

- An interest in certain businesses including, among others, Orange Burger Burrito, Rent to Own Car and A 2 B Mortgage.

- A former interest in real property located on West Boulevard in Los Angeles (or any reference to money lent against it).

In addition to the omissions, we identified the following

3

errors or misstatements in her bankruptcy schedules and SOFA:

- Overstatement of her net monthly take-home pay by more than $1,000.

- Understatement of her 2012 income by at least $40,000 and perhaps as much as $54,000, by omitting her independent contractor work for a business known as "Seasons at Laguna."

- An inability to reconcile the amount of contributions she listed in her SOFA as received from family members with the specific expenses she claimed they regularly paid on her behalf.

- An overstatement of her household size as including five persons. She later amended her SOFA to exclude her ex-husband who had resided outside the country for a matter of years, but she still claimed her 22-year old son as part of her household.

- The listing of her sister, Mahbob Yar, on her Schedule B as a lienholder on her 2010 Mercedes Benz but stating at her Rule 2004 examination that she did not owe her sister any money and that her sister actually owned the Mercedes despite Murtaza being listed on the Certificate of Title as the owner.

We remanded for trial on the issues pertaining to Murtaza's state of mind: whether she knowingly and fraudulently made the above-referenced errors and omissions.

**B      Pretrial and Trial Proceedings on Remand and the Focus on Murtaza's Inheritance.**

On remand, the parties engaged in pretrial proceedings that resulted in the entry of a pretrial stipulation and order containing about one hundred admitted facts, many of them confirming the existence of the above-referenced errors and omissions. Other admitted facts highlighted the conflicting pre- and postpetition statements Murtaza made under oath about the errors and omissions.

The primary focus of Murtaza's conflicting testimony concerned the disposition of her share of the inheritance from

4

her father and the settlement his estate in 2012. During a judgment debtor exam conducted by the plaintiffs four days before she commenced her bankruptcy case, Murtaza asserted that she did not have any interest in any decedent's estate and that she had not inherited any money in the last several years. Similarly, in her Schedule B, filed at the end of March 2014, she listed "none" in response to the question asking about interests in decedents' estates. Her Schedule B also indicated "none" for all other types of contingent, liquidated, unliquidated or intangible personal property of any kind. As determined on summary judgment by the bankruptcy court and affirmed in the first appeal, Murtaza's interest in the inheritance, or any claim she held based on not receiving her share of the inheritance, should have shown up somewhere on her Schedule B, and likely on her SOFA as well, but it was not mentioned in either of these documents or in her limited amendments to these documents.

In April 2014, at the meeting of creditors held pursuant to § 341(a), Murtaza told a different story. She stated during that examination that she had an interest in an inheritance she had not yet received.[3] Later on, during the plaintiffs' June 2014 Rule 2004 examination of Murtaza, she offered a more detailed account of what happened to her inheritance. As Murtaza explained, her father died roughly 35 years prior, but his estate

[3] Murtaza also testified at her meeting of creditors examination that she read her bankruptcy schedules and SOFA thoroughly before she signed them and believed the information reported therein was correct. She further testified to her belief that there were no errors or omissions she needed to bring to the trustee's attention and that all of her assets and creditors were listed in her schedules.

5

was not settled until 2012. Upon settlement of the estate, the entirety of the proceeds from the sale of her father's property in Afghanistan was forwarded to Rona, one of Murtaza's sisters. Rona was responsible for distributing the inheritance amongst Murtaza's siblings. According to Murtaza, Rona told Murtaza at the time of distribution that Murtaza's share, roughly $350,000, would go to her brother Bilal to partially pay or offset monies Bilal had lost investing in First AFG Financial, a finance company formerly owned by Murtaza's ex-husband.[4]

At trial, Murtaza initially testified that she told her bankruptcy counsel, Qais Zafari, "all about" the inheritance and that her attorney decided she did not need to disclose any interest in, or claims related to, the inheritance. Zafari similarly testified about his decision to omit the inheritance from Murtaza's bankruptcy schedules and SOFA. On cross-examination, however, neither Zafari nor Murtaza was able to recall the specifics regarding their discussion of the inheritance. More importantly, when pressed, neither recalled that Murtaza ever said anything other than that her father died more than 30 years prior to her bankruptcy filing, and that she did not receive any of her inheritance due to "conflicting family reasons."

Additionally, Murtaza provided inconsistent testimony as to her position vis-a-vis Bilal's taking her share of the inheritance. According to Murtaza, at first she acquiesced to

---

[4] For the sake of clarity, we refer to Murtaza's siblings by their first name. Some of them have the same last name as Murtaza. No disrespect is intended.

Bilal's receipt of her share because of the losses Bilal allegedly suffered from investing in First AFG Financial. Later on, Murtaza stated that she changed her mind and questioned Bilal's right to her inheritance share. Murtaza claimed that she did not assert her entitlement to her inheritance until after she filed bankruptcy. But on cross-examination, Murtaza was not consistent about when she decided that she, rather than Bilal, should receive her inheritance share.

The trial testimony of Murtaza's sister Mahbob Yar also was at odds with Murtaza's. In late 2012, Rona apparently transferred Murtaza's $375,000 inheritance share to Mahbob. At that time, Rona and Bilal told Mahbob that Bilal was entitled to Murtaza's inheritance share because of Bilal's lost investment in First AFG Financial. Also in 2012, Mahbob testified that she purchased a Mercedes for Murtaza and titled the vehicle in her name. Mahbob is listed as a lienholder, though Murtaza has stated that she did not owe her sister anything for the car. Testimony as to the source of the funds used to purchase the Mercedes was equivocal at best.

In 2013, after receiving the $375,000 but before Murtaza commenced her chapter 7 case, Mahbob sent an email to Bilal questioning how the $375,000 should be treated for tax purposes. At that time, Mahbob testified, the funds referred to in the 2013 email were disputed funds because Bilal had taken a larger portion of their father's estate than he should have. Moreover, Mahbob testified that Bilal (wrongly) claimed that his lost investment in First AFG Financial was the financial responsibility not only of Murtaza but also of her sisters.

7

Mahbob also paid Murtaza's mortgage after the inheritance was received. The testimony as to the source of the funds Mahbob used to pay Murtaza's mortgage was far from definitive. When asked at trial whether she paid Murtaza's mortgage from the pot of "disputed" monies she held, Mahbob answered, "Probably, I don't know. Probably. We don't know. It could come from my account." Later, she testified that she could not recall where the money came from.[5] Mahbob did testify that Bilal never received the $375,000. According to her, by the time of trial, the $375,000 was exhausted paying for Murtaza's litigation and living expenses and for settling a claim brought by Murtaza's chapter 7 trustee.

## C. The Bankruptcy Court's Decision After Trial.

On April 24, 2017, the bankruptcy court entered its memorandum of decision after trial finding in favor of the plaintiffs on their sole claim for relief.[6] The court specifically found that Murtaza made the false oaths, as

---

[5] Remarking on this testimony, the bankruptcy court concluded, "To be clear, it was never established in the evidence that defendant received the very same inheritance monies indirectly from her sisters to sustain her household immediately preceding the petition in lieu of what Bilal may have taken."

[6] The bankruptcy court disposed of all of the plaintiffs' other claims for relief by dismissing them without prejudice at the time of the bankruptcy court's original summary judgment ruling. Because our prior decision vacated the summary judgment and remanded for trial, the plaintiffs' other claims technically were reinstated at the time of remand. Nonetheless, plaintiffs later abandoned these other claims by not raising them in the pretrial stipulation and order, which superseded the parties' pleadings. As a result, the bankruptcy court's judgment on remand on the plaintiff's § 727(a)(4)(A) claim for relief disposed of the sole claim tried by the parties.

8

identified above, both knowingly and fraudulently. The court's findings focused heavily on the omitted interest in, or claim arising from, her share of the inheritance. After recounting many of the same inheritance-related events highlighted above, the court determined that the dispute with Bilal over her share of the inheritance must have been prominent in Murtaza's mind at the time she filed her bankruptcy petition. The court also determined that Murtaza's various, sometimes-conflicting, explanations for omitting from her schedules and SOFA both the inheritance and the dispute with Bilal were not credible or were not made in good faith. Among others, the court specifically rejected her claim that she decided she was entitled to her inheritance share after she filed bankruptcy. The court similarly rejected her claim that she was too naive or unsophisticated to understand that the inheritance should have been disclosed in her schedules and in her SOFA.

The court also ruled against her on her alleged reliance on the advice of her bankruptcy counsel. The court reasoned that Murtaza's claimed reliance on the advice of counsel did not negate her fraudulent intent because the errors and omissions should have been evident to her under the circumstances. The court further concluded that the other false oaths previously identified in its summary judgment ruling also could not be explained credibly, or in good faith, by advice of counsel or by Murtaza's claimed ignorance and naivete.

After receiving a belated post-trial brief from Murtaza, the court issued a one-page addendum to its memorandum decision. The bankruptcy court reiterated its rejection of Murtaza's advice of

9

counsel argument. According to the court, the argument was not made in good faith. The court emphasized that, at the time she filed her bankruptcy petition and schedules, Murtaza and her sisters were actively disputing Bilal's share of the inheritance. For this reason, her claim that she believed and relied upon her counsel's advice in omitting the inheritance and the dispute with Bilal was both unjustified and not supported by the record.

The bankruptcy court entered its judgment against Murtaza on July 25, 2017, and Murtaza timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J), and we have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court commit reversible error when it entered judgment in favor of the plaintiffs on their § 727(a)(4)(A) cause of action?

## STANDARDS OF REVIEW

In objection to discharge appeals, we review the bankruptcy court's findings of fact under the clearly erroneous standard, and its conclusions of law de novo. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (citing Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004)). We also review de novo the application of the facts to the applicable legal rules, to the extent that application requires the exercise of judgment about the values animating those rules. In re Retz, 606 F.3d at 1196; see also Aspen Skiing Co. v. Cherrett (In re Cherrett), 873 F.3d 1060, 1066 (9th Cir. 2017)

10

("if the bankruptcy court applied fact to law in a way that requires reference to the values that animate legal principles, we review it as if it were a legal finding.").

**DISCUSSION**

**A. Applicable Legal Standards.**

Under § 727(a)(4)(A), debtors may be denied discharge for making false oaths or accounts in connection with their bankruptcy cases. To obtain relief under this provision, the plaintiff has the burden of proof to establish by a preponderance of the evidence: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." In re Retz, 606 F.3d at 1196 (quoting Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005)).

The errors and omissions in Murtaza's bankruptcy schedules and in her SOFA constitute false oaths for purposes of the statute. In re Retz, 606 F.3d at 1196. Murtaza has not challenged on appeal that she made the false oaths or that they were material. Her appeal focuses exclusively on the third and fourth elements set forth above: whether she made the errors and omissions in her schedules and SOFA knowingly and fraudulently. The false oaths were made knowingly if Murtaza made them deliberately or consciously. Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 173 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167, 1168 (9th Cir. 2009) (citing In re Roberts, 331 B.R. at 883). The false oaths were made fraudulently if Murtaza: (1) made them, (2) knowing at that time they were false, and (3) with the intent and purpose of deceiving her creditors.

11

*In re Retz*, 606 F.3d at 1198-99.

To establish a § 727(a)(4)(A) claim for relief, constructive fraud is insufficient. Id. at 1196. The plaintiffs must prove actual fraudulent intent. Id. But circumstantial evidence, and inferences drawn from the debtor's conduct, can be used to establish the requisite intent. Id. at 1199. A pattern of conduct by the debtor demonstrating a reckless indifference to the truth can help support the bankruptcy court's fraudulent intent finding, but reckless indifference is not sufficient, by itself, to constitute fraudulent intent. Id.

**B. Sufficiency of the Evidence.**

On appeal, Murtaza primarily argues that there was insufficient evidence that she knowingly and fraudulently made the errors and omissions. She further argues that the bankruptcy court ignored her credible and uncontroverted explanations for her errors and omissions. We disagree. The evidence supports the bankruptcy court's findings of knowledge and intent. As the bankruptcy court cogently explained, based upon the timing of the ongoing dispute with her brother, Murtaza was well aware of her interest in, and claim for, her inheritance share at the time she reviewed and signed her bankruptcy schedules under penalty of perjury. The bankruptcy court also effectively found that Murtaza's various "innocent" explanations for omitting the inheritance were not credible.

The bankruptcy court gave detailed reasons why it did not believe Murtaza's claims that she omitted the inheritance as a result of inadvertence, a lack of sophistication, out of deference to the male members of her family, or because her

12

attorney told her to. In essence, the bankruptcy court saw the omission as part of Murtaza's efforts to keep her creditors at bay. While the court focused upon Murtaza's interest in the inheritance, the record is clear that Murtaza was very much aware of her judgment creditors' collection efforts. Indeed, her son, Zaid, candidly confirmed that Murtaza was placing her paychecks into his bank account to avoid collection efforts and to ensure that they were able to meet their living expenses.

On this record, we cannot say that the bankruptcy court's findings were illogical, implausible or without support in the record, as would be required to overturn these findings. See id. at 1196. Moreover, we must give particular deference to the bankruptcy court's credibility determinations, "because the bankruptcy court, as the trier of fact, had the opportunity to note 'variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" Id. (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985)).

In its memorandum of decision, the bankruptcy court did not separately discuss Murtaza's false oaths other than the omission of the inheritance. Even so, the record supports the bankruptcy court's knowledge and intent findings for most of these other false oaths. For instance, the debtor did not disclose her interest in her son Zaid's bank account at U.S. Bank, or the fact that she sometimes would cash her paychecks and deposit the cash in that account to keep the funds from being levied by her creditors. At the time Murtaza filed her bankruptcy petition and schedules, she should have been very conscious of her children's

13

bank accounts, particularly Zaid's U.S. Bank account. Just a few days before her chapter 7 filing, at the judgment debtor's exam conducted by the plaintiffs, they questioned her about her interest in her children's bank accounts. Yet she still claimed in her SOFA that all of the money in their accounts was theirs, and she did not list at all Zaid's account at U.S. Bank. On this record, the bankruptcy court's knowledge and intent findings regarding Murtaza's omission of her son's U.S. Bank account were not clearly erroneous. Given her stated purpose in transferring the funds to Zaid, even if Murtaza was not named as an account holder on the account itself, her failure to disclose the funds she transferred to Zaid via his U.S. Bank account could support a finding that she knowingly and fraudulently made a false oath.

As for the Mercedes vehicle her sister Mahbob purchased, this was disclosed on Murtaza's Schedule B and in her SOFA. The problem was how it was disclosed. In her Schedule B, Murtaza contended that she did not own the vehicle and that Mahbob was both the owner and a lienholder. Both Murtaza and Mahbob repeated this claim in their trial testimony even though their other admissions about the vehicle contradict their ownership claims. These admissions include:

- Murtaza is listed as the vehicle's registered owner on the official vehicle registration form or "pink slip."

- Mahbob purchased the vehicle for Murtaza's use;

- Mahbob transferred possession of the vehicle to Murtaza; and

- Both Murtaza and Mahbob intended Murtaza to be the person financially responsible for insurance, maintenance, repairs, and any "traffic issues" that might arise.

It is outlandish for Murtaza and Mahbob to claim that Mahbob

14

actually owned the vehicle given everything they did to vest Murtaza with every conceivable indicia of ownership. In fact, there is no plausible explanation why Mahbob would be listed on title as a lienholder if she actually owned the vehicle. On the evidence presented, Murtaza's repeated claim that Mahbob actually owned the vehicle is, at best, misguided and, at worst, a rather obvious ploy by Murtaza to impede the plaintiffs' efforts to enforce their judgments against the vehicle. The bankruptcy court's knowledge and intent findings regarding the Mercedes Benz were not clearly erroneous.[7]

The same is true regarding the misstatements Murtaza made regarding her income, her expenses, her family contributions, and her household size. Considered in isolation, it is perhaps understandable (and credible) that the errors she initially made in reporting these items were the result of some inadvertent mistake on her part or on the part of her counsel. Nonetheless, when considered against the fact that she did not amend her schedules to accurately report these items, and measured against the number of other errors and omissions, the record supports the bankruptcy court's determination that all of these errors and omissions were part of a pattern of false oaths made by Murtaza

---

[7] In discussing this reporting error, the plaintiffs and the bankruptcy court focused more on the fact that Murtaza identified Mahbob as the holder of a lien against the Mercedes, when in fact Murtaza later admitted that Mahbob was not a creditor of hers. As we have explained above, we believe that Murtaza's misstatement in her Schedule B that she is not the owner of the car is far more material and far more egregious. It also is far more illustrative of the efforts Murtaza was willing to go to in her attempts to impede the plaintiffs' collection efforts.

15

demonstrating Murtaza's reckless indifference to the truth. From this pattern and the other circumstances surrounding Murtaza's errors and omissions, the bankruptcy court reasonably could and did infer Murtaza's fraudulent intent. These findings also were not clearly erroneous.

The above discussion addresses most of the errors and omissions the bankruptcy court relied on in sustaining the plaintiffs' objection to Murtaza's discharge. The handful of other errors and omissions (we have not addressed in this discussion) were cumulative in nature. Regardless of Murtaza's knowledge and intent as to those other errors and omissions, our analysis demonstrates that the bankruptcy court had ample factual and legal grounds to support its judgment under § 727(a)(4)(A).[8]

**C.    Advice of Counsel Argument.**

Citing Hultman v. Tevis, 82 F.2d 940, 941 (9th Cir. 1936), Murtaza argues on appeal that the bankruptcy court erred when it rejected her argument that, in making the errors and omissions,

---

[8] Citing Agai v. Antoniou (In re Antoniou), 515 B.R. 9, 23 (Bankr. E.D.N.Y. 2014), the bankruptcy court indicated that the burden of production shifted to Murtaza to present a credible, innocent explanation for her errors and omissions once the plaintiffs established the existence of the errors and omissions. Considering the case in its entirety, we are convinced that the bankruptcy court did not materially deviate from the correct standard of proof. See generally Rule 4005; Devers v. Bank of Sheridan, Montana (In re Devers), 759 F.2d 751, 754 (9th Cir. 1985) ("it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case."). The numerous errors and omissions in her schedules and SOFA, which Murtaza admitted to making and most of which were never corrected, as well as her numerous conflicting statements regarding her errors and omissions, were more than sufficient to establish the plaintiffs' prima facie case as to all of the elements for their § 727(a)(4)(A) claim.

16

she relied on the advice of her counsel. Murtaza contends that the bankruptcy court imposed on her a duty to establish far more than her own good faith. According to her, the bankruptcy court impermissibly required her to have sufficient expertise in bankruptcy law to critically assess the merits of her attorney's legal advice. Murtaza posits that this requirement is inconsistent with Hultman. To support this claim, Murtaza points to the language in Hultman indicating that whether the attorney's advice was correct was not a prerequisite to the bankrupt's advice of counsel argument. Id.

Generally, a debtor who relies in good faith on the advice of his or her counsel lacks the intent to deceive his or her creditors. First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1343 (9th Cir. 1986) (citing Hultman, 82 F.2d at 941).[9] When good faith is absent, such as when it is evident that the debtor's disclosures are incorrect or incomplete, the advice of counsel argument will not save the debtor from an adverse intent finding. See In re Retz, 606 F.3d at 1199. "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." Id. (quoting Boroff v. Tully (In re Tully), 818 F.2d 106, 111 (1st Cir. 1987)).

Here, the bankruptcy court found that Murtaza's errors and omissions were evident. Based on this finding, the bankruptcy

---

[9] "Advice of counsel is not regarded as a separate and distinct defense but rather as a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent." Bisno v. United States, 299 F.2d 711, 719 (9th Cir. 1961).

17

court effectively concluded that Murtaza could not launder her errors and omissions to remove any stain of her intent to deceive by sharing with her counsel Zafari an incomplete and incorrect view of her assets and finances and then getting him to make the final decision as to how those assets and finances should be reported based on the erroneous view she knowingly and intentionally gave him. These findings were supported by the record, especially with regard to the inheritance, the Mercedes, and her son Zaid's bank account at U.S. Bank.

Murtaza's reliance on Hultman is misplaced. We acknowledge that Hultman is still good law and is binding on this Panel. See Ellison v. JPMorgan Chase Bank, N.A (In re Ellison), Dkt. No. CC-16-1328-PaTaKu, 2017 WL 3976304 (Mem. Dec.) (9th Cir. BAP Sept. 8, 2017) (identifying recent panel decisions relying on and interpreting Hultman). Nonetheless, Murtaza ignores a critical factor evident in Hultman: there, the debtor fully disclosed to his attorney all of the facts concerning the debtor's questioned conduct. Hultman, 82 F.2d at 941. Here, in contrast, Murtaza only disclosed to Zafari a very narrow view of her inheritance and of her son Zaid's U.S. Bank account, which restricted view caused him to determine that there was no need for Murtaza to disclose these items. As for the Mercedes, it appears that Zafari simply accepted at face value Murtaza's representation that Mahbob actually owned the vehicle, and held a lien on it, even though those representations were supported by neither the Certificate of Title for the vehicle, nor by the details regarding the Mercedes that came out during Murtaza's and Mahbob's testimony at trial. On these facts, the bankruptcy

18

court's finding that Murtaza did not, in good faith, rely on the advice of her counsel was not clearly erroneous.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's judgment denying Murtaza her discharge.